UNITED STATES, Appellee,

v.

Charles ARNOLD, Specialist Five U.S. Army, Appellant.

No. 50,323.

CM 442627.

U.S. Court of Military Appeals.

Sept. 30, 1987.

Certiorari Denied Feb. 22, 1988.

See 108 S.Ct. 1015.

**130**

For Appellant: *Captain Pamela G. Montgomery* (argued); *Colonel William G. Eckhardt, Lieutenant Colonel Arthur L. Hunt, Major Stephen R. Dooley, Captain Alan D. Groesbeck, Captain David L. Carrier* (on brief); *Colonel Brooks B. La Grua, Major Eric T. Franzen, Captain William T. Wilson, Captain Karen S. Davis.*

For Appellee: *Captain Richard Parker* (argued); *Colonel James Kucera, Lieutenant Colonel Adrian J. Gravelle, Major Patrick M. Flachs, Captain Edmond R. McCarthy, Jr.*

*Opinion*

COX, Judge:

Appellant was tried by general court-martial on February 22 and 23, 1982. The court was convened at Mannheim, Federal Republic of Germany, and was composed of officer and enlisted members. Despite his pleas, he was found guilty of taking indecent liberties with and committing lascivious acts upon his daughter, who was under 16 years of age, in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934. He was sentenced to be confined for 5 years; to forfeit all pay and allowances; to be reduced to pay grade E–1; and to receive a bad-conduct discharge from the Army. The convening authority reduced the confinement to 3 years but otherwise approved the findings and sentence as adjudged. The Court of Military Review affirmed. 18 M.J. 559 (1984).

This is yet another child-abuse case where the Government proved its case through use of an accused's confession and statements made to an intermediary by the complaining witness. *See United States v. Barror*, 23 M.J. 370 (C.M.A.1987), and *United States v. Hines*, 23 M.J. 125 (C.M.A.1986).[1] The victim failed to appear at trial. Furthermore, in spite of defense counsel's objection, she was not subpoenaed; the military judge did not abate the proceedings until she was available; she was not deposed pretrial; and no other legal means were employed to compel her to appear. Indeed, although the Government made some informal effort to locate the witness, trial counsel's assertions to the court members made it abundantly clear that he had no intention of calling the witness to the stand. Instead, he said he would rely on appellant's confession and statements made by the victim to her school counselor, the school nurse, and agents of the Criminal Investigation Command (CID) to corroborate that confession.[2]

**I**

WHETHER THE ARMY COURT OF MILITARY REVIEW ERRED IN HOLDING THAT ... [THE VICTIM'S] OUT–OF–COURT DECLARATION TO HER SCHOOL COUNSELOR CONSTITUTED AN EXCITED UTTERANCE UNDER MIL.R.EVID. 803(2).

**II**

WHETHER THE ARMY COURT OF MILITARY REVIEW ERRED IN HOLDING THAT THE ERRONEOUS ADMISSION OF ... [THE VICTIM'S] OUT–OF–COURT STATEMENTS TO HER SCHOOL NURSE AND TO THE CID WAS NOT PREJUDICIAL TO APPELLANT.

**III**

WHETHER APPELLANT'S RIGHT OF CONFRONTATION UNDER THE SIXTH AMEND-

---

1. In *United States v. Barror*, 23 M.J. 370 (C.M.A. 1987), we considered whether a written statement given to agents of the Air Force Office of Special Investigations by appellant's stepson, alleging that appellant had sexually assaulted him, was admissible under Mil.R.Evid. 804(b)(5). In *United States v. Hines*, 23 M.J. 125 (C.M.A.1986), we considered whether, pursuant to the residual-hearsay exception, the military judge erred by admitting into evidence written statements made by the three key witnesses after they refused to testify in person at either the Article 32, Uniform Code of Military Justice, 10 U.S.C. § 832, investigation or the trial.

2. We agreed to review four issues to determine:

According to the Government, on the night of November 5, 1981, appellant approached his 13-year-old daughter in the kitchen of their home "and felt her up" by fondling "her pubic area." Later that evening, he entered her bedroom and told her to remove her underpants, which she did. Appellant heard his wife coming out of the shower and left the room, instructing his daughter to leave her pants off. He returned later, climbed into bed with her, removed his penis from his trousers, and "attempted to" have sexual intercourse with her, explaining that he was only doing it because "fathers are supposed to be the first ones to have sex with their daughters."

The next morning, November 6, the daughter went to school and immediately sought out Mr. McGee, her high school counselor, and told him "that she had to see" him. He arranged for her to talk with him after her second-period class. Mr. McGee testified that the victim normally was "a very bubbly ... girl," but on that day "[s]he ... seemed to be really agitated" and "very, very subdued"; "[s]he was crying ... [and he] had to give her Kleenexes." During their conversation, the child asked, "Is the father supposed to be the first one to have sex with you?" When he questioned her motives for asking such a thing, "that just opened the gate, ... she started explaining in detail what had happened ... the previous night."

Mr. McGee summoned the school nurse, and the story was repeated in her presence. Later that day, the girl was taken to the CID office, where she made another statement, and an investigation began.

On November 6, appellant rendered a statement to CID agents in which he denied the allegations against him. However, on November 13, he gave CID agents a second, sworn, written statement in which he admitted committing the alleged acts. Appellant recanted this confession at trial, and the victim recanted her statement on December 22, stating, "I would like to say my first statement was not true. I do believe it could have been a dream."

At trial, the Government, through examination of Mr. McGee, offered the hearsay testimony of the victim. The military judge admitted the testimony as an "excited utterance" pursuant to Mil.R.Evid. 803(2), Manual for Courts-Martial, United States, 1969 (Revised edition). He likewise admitted the testimony of the school nurse recounting the victim's statements to her as an "excited utterance" and the victim's November 6 statement as one of the "other exceptions" to the hearsay rule. Mil.R. Evid. 803(24).

The Court of Military Review held that the military judge erred in admitting the nurse's statement as an "excited utterance" because, "[w]hile the two declarations [to the counselor and the nurse] were part of a continuous episode, the second [to the nurse] was more a result of the counselor's action in initiating the discussion with the nurse and the statement more a result of their urgings and questions." The court likewise found that the statements to the CID were not admissible under Mil.R.Evid. 803(24), deferring to Mil.R. Evid. 804(b)(5) as the operative rule appearing to be "specifically designed to address the problem of family members who are witnesses to an intra-family criminal offense." This rule requires a determination that the witness is "unavailable," which was not done in this case. In fact, there is no showing that the witness was unavailable in the legal sense. 18 M.J. at 561.

The court further found that admitting the nurse's and the CID agent's testimony

MENT OF THE UNITED STATES CONSTITUTION WAS VIOLATED BY ADMISSION OF THE ALLEGED VICTIM'S OUT-OF-COURT STATEMENTS, WHERE THE GOVERNMENT FAILED TO DEMONSTRATE (1) ACTUAL UNAVAILABILITY OF THE ALLEGED VICTIM AND (2) SUFFICIENT STEPS TO SECURE HER PRESENCE AT THE COURT-MARTIAL.

IV
WHETHER THE MILITARY JUDGE ERRED IN HIS CHARACTERIZATION OF ... [THE VICTIM'S] STATEMENT TO THE CID AS A PRIOR CONSISTENT STATEMENT AND IN HIS INSTRUCTION TO THE MEMBERS TO CONSIDER THAT OUT-OF-COURT DECLARATION AS A PRIOR CONSISTENT STATEMENT.

regarding the victim's statements to them constituted harmless error in view of appellant's confession and the cumulative nature of the evidence.

■ We agree. First, we hold that appellant's confession, as corroborated by the victim's spontaneous and unsolicited "excited utterances" to her school counselor, were ample evidence, certainly sufficient to convict appellant beyond a reasonable doubt. Second, we find that admission of the additional statements, albeit error as decided by the Court of Military Review, was harmless error beyond any reasonable doubt. Art. 59(a), UCMJ, 10 U.S.C. § 859(a); *United States v. Davis*, 20 M.J. 61 (C.M.A.1985); *United States v. Remai*, 19 M.J. 229 (C.M.A.1985).

Two questions are presented in resolving this case against appellant.

1. Is the statement to the school counselor an "excited utterance?"

2. Did admitting the hearsay testimony in lieu of the victim's appearance at trial violate appellant's right to confront witnesses against him as provided by the Sixth Amendment to the Constitution?

■ Unfortunately, neither the Military Rules of Evidence nor case law of this Court—or other courts—have established a "bright line" rule on "excited utterances."

But it is universally recognized that, in order for there to be an excited utterance, the statement must be "spontaneous, excited or impulsive, rather than the product of reflection and deliberation." *United States v. Iron Shell*, 633 F.2d 77, 86 (8th Cir.1980), *cert. denied*, 450 U.S. 1001, 101 S.Ct. 1709, 68 L.Ed.2d 203 (1981), *citing* numerous cases. Further, the event must be "startling." *United States v. LeMere*, 22 M.J. 61, 67 (C.M.A.1986). And most importantly, the declarant must be "under the stress of excitement caused by the event." Mil.R.Evid. 803(2). Here, even though at least 12 hours had passed before the victim's first statement was made, "[t]he lapse of time between the startling event and the out-of-court statement although relevant is not dispositive in the application of rule 803(2)." 633 F.2d at 85, *citing Garcia v. Watkins*, 604 F.2d 1297, 1300 (10th Cir.1979).

We are convinced by the facts and circumstances of this case that the *girl's unsolicited, spontaneous statements to her school counselor at the first available opportunity* while she was "very, very agitated" were indeed "excited utterances." [3] The victim was acting not only under the influence of the attempted sexual assault but also under the threat of being shot by her father.

3. "A fresh complaint of a sexual offense may come within ... [the] exception [for excited utterances] depending on the circumstances." Analysis of Mil.R.Evid. 803(2), Manual for Courts-Martial, United States, 1969 (Revised edition), p. A18–103. *See United States v. Smith*, 14 M.J. 845 (A.C.M.R.1982) (evidence of fresh complaint of a sexual offense which is nonhearsay or fits within another exception to the hearsay rule is relevant and admissible). Several states have adapted their hearsay exceptions to accommodate the complaints of child victims. In *State v. Garay*, 453 So.2d 1003, 1007 (La.App. 4th Cir.1984), the court stated that their *res gestae* exception, "defined as 'events speaking for themselves under the immediate pressure of the occurrence, through the instructive, impulsive, and spontaneous words and acts of the participants, and not the words of the participants when narrating the events,'" has been "repeatedly interpreted" by the Louisiana Supreme Court

to admit the original complaint of a young child when the ... facts and circumstances of

the case indicate that it was a product of a shocking episode and not a fabrication. The original complaint of the young child is the statement made at the first reasonable opportunity under the particular facts and circumstances of the case.

(Citations omitted.) The court further opined that "[a] very young child raped by an adult standing in the position of parent, caretaker, or friend cannot be expected to immediately come forward with a complete and exact report of the event.... [T]he child may be unable to speak about the incident until" the child is "safely in the presence of a compassionate adult whom" the child "can trust." *See People v. Taylor*, 66 Mich.App. 456, 239 N.W. 2d 627 (1976); *see also Sparks v. State*, 172 Ga.App. 891, 324 S.E. 2d 824, 825 (1984) (admissibility of child's statement not dependent upon "any arbitrary time, ... but is left to the sound discretion of the court in determining ... whether declarations meet the requirements of being free from 'all suspicion of device or afterthought'"). *See generally* 89 A.L.R. 3d 102 (1979 & Supp.1987).

While we "yield to no one in ... [our] respect for the Confrontation Clause of the Sixth Amendment," *Lee v. Illinois*, 476 U.S. 530, 106 S.Ct. 2056, 2066, 90 L.Ed. 2d 514 (1986) (Blackmun, J., dissenting), *see United States v. Hines, supra,* we are satisfied that we do not impinge upon its awesome guarantees by holding that long-established, well-recognized exceptions to the hearsay rules, such as "excited utterances," are so inherently reliable as to be admissible and, thus, conform to the constitutional guarantee of confrontation. *See United States v. Dunlap,* 25 M.J. 89 (C.M.A.1987). Under such circumstances, we are also convinced that a showing of unavailability is not required, although we prefer that every reasonable effort be made to ensure the appearance of the witness. *United States v. Inadi,* 475 U.S. 387, 106 S.Ct. 1121, 89 L.Ed.2d 390 (1986); *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). Furthermore, here, as in *United States v. Hines, supra,* "appellant's admissions so confirm the reliability of the declarant's statements, at least to the extent of actual corroboration, that our misgivings about 'afford[ing] the trier of fact a satisfac-

tory basis for evaluating the truth of the prior statement,' ... are ... extinguished." *Id.* at 137–38 (footnote omitted), *citing California v. Green,* 399 U.S. 149, 161, 90 S.Ct. 1930, 1936, 26 L.Ed.2d 489 (1970).

Let there be no doubt, however, that this Court favors confrontation, and this case should be read very narrowly. *United States v. Hines, supra; United States v. Cokeley,* 22 M.J. 225 (C.M.A.1986). But, we recognize that "[t]here is a real world as well as a theoretical one," *Lee v. Illinois, supra* at 2066. When a child reports sexual abuse to a trusted school counselor the first thing the morning after it has happened, in a highly-agitated and emotional condition, and, later, after being warned of his constitutional rights to remain silent and to engage the services of a lawyer, the alleged defendant confesses to the very acts of which the child has complained, it is time to apply real-world standards and uphold his conviction.[4]

The decision of the United States Army Court of Military Review is affirmed.

---

4. Although Chief Judge Everett may be technically correct that the victim did not uncontrollably scream out her complaint about her father within minutes after the attack, his perception of how excitement manifests itself in adolescent girls is, in my opinion, incorrect. The "stress of excitement" can linger long after a traumatic episode and not manifest itself until the child is in the company of friends, confidants, teachers, ministers, or others they trust. Is it written in stone that every female (or male for that matter) must or will react in a prescribed manner to a given situation? Of course not. For example, if three people happen to see a fatal accident, one might want to get a closer look, one might pass out immediately, and the third might become hysterical or sick. Can any man comment on how or what a female feels when she's sexually assaulted—just as males cannot comment on the pain of childbirth? Add to that the fact that a girl is assaulted by her own father, a person to whom she is supposed to look for love, guidance, protection, and care, and only God knows what she will do—some have been known to *never* say a word until years have passed and, sadly, some commit suicide. *Commonwealth of Va. v. Paul J. Kauffman,* Crim. No. 18055 (13–year–old girl took her own life by jumping into the path of oncoming train; dur-

ing investigation by Prince William County authorities to determine why this child would commit suicide, her personal diary was uncovered, wherein she had made numerous entries describing sexual assaults upon her by her father; defendant was tried by jury and convicted on Jan. 9, 1987; case has been appealed to the Court of Appeals for the Commonwealth of Virginia). Silence does not mean they were not traumatized.

Here, the communication with the school counselor, a person who knew the girl well enough to detect substantive differences in her demeanor, was made at the *first opportunity* this young girl had to "utter" her complaint. The fact that she did not appear at trial does not render her statements false. Theoretically, the lapse of time between the date of the incident and the trial was sufficient to permit this young girl to be pressured in various ways not to testify, *i.e.,* she continued to reside at home and could see first-hand the stress placed on the family unit by appellant's arrest and forthcoming trial. This could, by itself, cause a young girl to bolt as this one did.

Although it may be more intellectually honest to fit this evidence into Mil.R.Evid. 803(24), there is ample authority to support its admission as an "excited utterance." *See* n. 3, *supra.*

SULLIVAN, Judge (concurring in the result):

I would affirm the conviction even without the challenged hearsay statements. Appellant's sworn voluntary confession was sufficiently corroborated by his admitted presence at the scene of the incident that night and by his daughter's agitated demeanor the morning after the incident. Mil.R.Evid. 304(g), Manual for Courts-Martial, United States, 1969 (Revised edition); *United States v. Yeoman,* 25 M.J. 1 (C.M.A.1987). In any event, this girl victim was under a gun threat by her father when she made the statement to Mr. McGee. Mil.R. Evid. 803(2).

EVERETT, Chief Judge (dissenting):

I

The alleged victim—appellant's stepdaughter—did not appear at the trial; and, apparently, no effort was made by the Government to secure her presence. In her absence, the prosecution, over strenuous defense objection, introduced in evidence several out-of-court statements by her on the day after the alleged offense. The first was to a high school counselor, Mr. McGee; the next was in the presence of Mr. McGee and a school nurse, Mrs. Frank; and finally there was a written sworn statement to agents of the Criminal Investigation Command (CID). Both the principal opinion and the Court of Military Review hold that the latter two statements were inadmissible. I fully agree. However, I am at odds with their conclusion that the first statement to Mr. McGee was admissible as an excited-utterance hearsay exception under Mil.R.Evid. 803(2), Manual for Courts-Martial, United States, 1969 (Revised edition).

The rationale of this exception is "that persons are less likely to have concocted an untruthful statement when they are responding to the sudden stimulus of 'a star-

tling event.' " *United States v. LeMere,* 22 M.J. 61, 68 (C.M.A.1986). Unlike the requirement under the original version of the 1969 Manual for Courts-Martial (para. 142*b* ), which authorized admission in evidence of a declarant's "spontaneous exclamation," there is no requirement under the Military Rules of Evidence of "independent evidence of the startling event which gave rise to" the excited utterance. *See United States v. Sandoval,* 18 M.J. 55, 62 (C.M.A. 1984). However, the excited utterance must occur "while the declarant was under the stress of excitement caused by the event or condition." *United States v. LeMere, supra* at 67.

In *LeMere,* this Court agreed with the Court of Military Review that a statement made by a 3–and–a–half–year–old daughter to her mother the morning after the alleged sodomy could not qualify as an excited utterance, because the declarant clearly was no longer "under the stress of excitement" after a 12–hour lapse of time. In the present case, it is even more difficult than it would have been in *LeMere* to justify reception of the statement, because the alleged victim was 13 years of age and probably would be less likely than a younger child to sustain for a long period any excitement resulting from the alleged event.*

When the girl had first come in to see Mr. McGee, she had been "very quiet, subdued," rather than excited. Then, over an hour and a half passed between the time that she first approached Mr. McGee and asked to speak with him and when she finally talked with him. Thus, there was ample opportunity for reflection; and so the latter conversation with this counselor clearly does not comply with the rationale of an "excited utterance"—namely, that if someone makes a statement about an emotional event before having an opportunity to reflect, it is likely to be truthful. When she did commence the conversation, it be-

---

* As I have commented elsewhere, "Judge Clause apparently believed that for a small child excitement can continue much longer than for an adult." *United States v. LeMere,* 22 M.J. 61, 68 (C.M.A.1986); *see United States v. LeMere,* 16 M.J. 682, 688 (A.C.M.R.1983) (Clause, S.J., concurring.)

gan not with a statement but with the question whether "the father [is] supposed to be the first one to have sex with you?" Only when Mr. McGee asked why she was inquiring, did she volunteer her accusations against appellant. According to McGee, she began crying later in the interview; but it would be bootstrapping to reason that excitement generated by telling about an event can give rise to the "excited utterance" contemplated by Mil.R.Evid. 803(2). Subsequently, when Mrs. Frank, the school nurse, was present, the girl was at times very calm and staring off into space.

If the statement to Mr. McGee was inadmissible, almost nothing is left of the Government's case. Judge Sullivan refers to appellant's "admitted presence at the scene of the incident that night and ... his daughter's agitated demeanor the morning after the incident." However, I perceive little significance in Arnold's "presence" in the home where he and his daughter lived; and I am not sure what was the "agitated demeanor" and why it should be given much weight.

Of course, the issue is not one of the sufficiency of evidence to corroborate a confession but instead whether an accused has been prejudiced by reception of inadmissible evidence. It has not even been argued to this Court that, if the statement to Mr. McGee was inadmissible, error in receiving it was not prejudicial. While I do not believe such an argument has merit, it would seem that, before appellant's conviction is affirmed on this ground, the case should be remanded to the Court of Military Review for consideration of the issue of prejudice.

## II

In my view, even if the statement to Mr. McGee was properly admitted—as Judge Cox and the Court of Military Review believe is true—appellant is still entitled to a retrial because of the erroneous admission of the other statements—especially the girl's detailed written statement to the CID.

Here, unlike *LeMere*, the alleged victim did not testify at trial and so could not be observed by the factfinder. *Cf. United States v. White*, 25 M.J. 50 (C.M.A.1987) (Everett, C.J., concurring). No showing has been made that she was unavailable; and, since she had apparently attempted to repudiate her pretrial statements, the Government probably was quite content not to have her testify. Her out-of-court statements do not fall within any established hearsay exception.

Accordingly, any error in admitting the extrajudicial statements was of constitutional dimensions and transgressed appellant's right of confrontation. Consequently, the test for affirmance is whether the appellate court is convinced beyond a reasonable doubt that the accused was not prejudiced by the error at trial. *United States v. Remai*, 19 M.J. 229 (C.M.A.1985).

Under such a test, I cannot see how Arnold's conviction can be affirmed. Indeed, if the statement to Mr. McGee was inadmissible, I cannot understand how the conviction could be upheld under *any* harmless error test with which I am familiar.

## III

In closing, I emphasize that I abhor child abuse as much as anyone; and I recognize the difficulties a prosecutor must face in such cases. However, I also recognize that children sometimes make false accusations of sexual abuse and that even a confession is not conclusive evidence of guilt. The rights of a child victim are important; but so, too, are the constitutional rights of a criminal defendant, especially when faced with accusations of committing crimes which stir such deep feelings as these.