# UNITED STATES NAVY–MARINE CORPS COURT OF CRIMINAL APPEALS

———————————————

## No. 201500360

———————————————

### UNITED STATES OF AMERICA
Appellee

v.

### HYUNHO YOON
Hospitalman Recruit (E-1), U.S. Navy
Appellant

———————————————

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge: Captain Franklin J. Foil, JAGC, USN.
Convening Authority: Commander, Navy Region Southeast, Naval Air Station, Jacksonville, FL.
Staff Judge Advocate's Recommendation: Commander Nell O. Evans, JAG, USN.
For Appellant: Lieutenant Doug Ottenwess, JAGC, USN; Lieutenant Ryan W. Aikin, JAGC, USN.
For Appellee: Lieutenant Robert J. Miller, JAGC, USN; Lieutenant Taurean K. Brown, JAGC, USN.

———————————————

Decided 27 April 2017

———————————————

Before MARKS, FULTON, and BELSKY, *Appellate Military Judges*

———————————————

**This opinion does not serve as binding precedent, but may be cited as persuasive authority under NMCCA Rule of Practice and Procedure 18.2.**

———————————————

BELSKY, Judge:

In a mixed-plea case a military judge, sitting as a special court-martial, convicted the appellant, pursuant to his pleas, of violating a lawful general order, contrary to Article 92, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 892. The military judge also convicted the appellant, contrary to his

pleas, of abusive sexual contact, in violation of Article 120(d), UCMJ, 10 U.S.C. § 920(d), for wrongfully touching the breast of Hospital Corpsman Apprentice (HA) LM, U.S. Navy.[1] The adjudged sentence included six months' confinement and a bad-conduct discharge. The convening authority (CA) approved the sentence as adjudged and, with the exception of the bad-conduct discharge, ordered the sentence executed.

Following our initial review of the case, submitted without assignment of error, we specified the following issues: (1) whether the appellant's conviction for abusive sexual contact was legally and factually sufficient where the evidence during the government's case indicated only that the appellant "groped" HA LM while she was asleep, unconscious, or otherwise unaware, but not that he touched her breast as alleged in the specification; (2) whether the military judge erred in admitting as an excited utterance a hearsay statement from HA LM that the appellant touched her breast; and (3) whether this court had the authority under Article 66(c), UCMJ, to affirm the appellant's conviction through certain exceptions and substitutions. In his response to these specified issues, the appellant also raised a supplemental assignment of error alleging the specification underlying the appellant's conviction failed to state an offense. Having received and considered briefs on all the issues, and having carefully reviewed the record of trial, we find that the appellant's conviction for abusive sexual contact is factually insufficient. We will take corrective action in our decretal paragraph.[2]

## I. BACKGROUND

On the evening of 17 January 2014, several service members, including the appellant and HA LM, met at a hotel in San Antonio, Texas, to socialize and drink alcohol before heading to a nearby nightclub. The events of the early morning that followed led the government to allege a violation of Article 120(d), claiming the appellant did:

> on or about 18 January 2014, commit sexual contact upon [HA LM], to wit: wrongfully touching her breast with his hand, when the accused knew or reasonably should have known that

---

[1] The military judge found the appellant guilty of this offense after rejecting the appellant's guilty plea to the lesser included offense of assault consummated by a battery, in violation of Article 128, UCMJ, 10 U.S.C. § 928. The military judge rejected the plea based on a concern that the appellant's answers during the providence inquiry raised a mistake of fact defense.

[2] Our ruling on factual sufficiency renders moot the appellant's supplemental assignment of error that the specification in this case failed to state an offense.

> [HA LM] was asleep, unconscious, or otherwise unaware that the sexual contact was occurring.[3]

Based on the evidence, the specification referred to one of two possible encounters between the appellant and HA LM which, for ease of discussion, we will refer to as the "0600 incident" and the "0100 incident."

During the government's case, HA LM testified that, due to her intoxication, she had only vague memories of what happened after she and the group left the hotel for the club on the night in question. She remembered vomiting out the car window during the cab ride to the club, and falling in the grass when they arrived outside the club. She testified that the next thing she remembered was waking up around 0500 or 0600, in a room in a hotel other than the one at which she had started her evening, wearing only her shirt, with the appellant breathing in her ear and "groping" her (the "0600 incident").[4] HA LM also testified that she subsequently traveled back to the original hotel and confided in Hospitalman (HN) JQ, U.S. Navy, that she "woke up to [the appellant] groping [her]."[5] HA LM never explained during her testimony what she meant by her use of the term "groping" and never specifically said the appellant touched her breast.

The government also introduced the appellant's sworn statement to investigators from the Naval Criminal Investigative Service (NCIS). In this statement, the appellant admitted touching HA LM's breast when they were alone, at approximately 0100, in the new hotel room HA LM mentioned in her testimony (the "0100 incident"). The appellant also stated that when he touched HA LM's breast, she indicated she did not want him touching her, and he stopped. The appellant denied touching HA LM at all at 0600. The government also introduced evidence that upon returning to base the next day, the appellant admitted to other service members who were at the party the night before that he was "feeling up on [HA LM]," and had done "something wrong."[6]

During the defense's case, the appellant testified consistently with his statement to NCIS, admitting again that he touched HA LM's breasts at approximately 0100 while she was still awake. He also again denied touching HA LM's breast later in the morning while she was sleeping.

---

[3] Charge Sheet.

[4] Record at 117-18.

[5] *Id.* at 121.

[6] *Id.* at 204-05, 207, 212.

The defense also called HN AZ, who testified both as to HA LM's level of intoxication during the night in question and her opinion as to HA LM's truthfulness. On cross-examination, and over trial defense counsel's hearsay objection, trial counsel elicited from HN AZ that HA LM told her sometime the next day that "she woke up to [the appellant] touching her breasts."[7] The military judge admitted HA LM's statement as an excited utterance.

Throughout the court-martial, trial counsel took the position that the military judge could find the appellant guilty of abusive sexual contact based on either the "0100 incident" or the "0600 incident." During opening statements, trial counsel referred to the "0100 incident," stating that when the appellant "touched [HA LM's] breast for the first time . . . [t]he touch revived her" and she indicated for the appellant to stop.[8] Trial counsel also stated that "[a]round 0600, [HA LM] was jolted awake" to find the appellant touching her breast a second time.[9] In closing argument, trial counsel reiterated his position that both instances of sexual contact occurred stating, "[a] finding that either one of these instances occurred would be sufficient to support a finding of guilty[.]"[10] Conversely, the appellant's argument at trial was that he mistakenly thought HA LM consented to his touching her breast during the "0100 incident," and that the "0600 incident" never occurred. The military judge found the appellant guilty of the specification.[11] Neither party requested special findings, nor did the military judge provide any *sua sponte*.

## II. DISCUSSION

Before determining whether the evidence was factually and legally sufficient, we must first determine what evidence we can consider in performing this task, as such a review is limited to evidence properly admitted at trial. *United States v. Abdirahman*, 66 M.J. 668, 672 (N-M. Ct. Crim. App. 2008) (en banc) (stating that "[i]n reaching our decision regarding the legal and factual sufficiency of the evidence, we have disregarded the evidence admitted in error." (citing *United States v. Holt*, 58 M.J. 227, 232 (C.A.A.F. 2003))). This requires us to first address whether the military judge committed prejudicial error when he admitted as an excited utterance HA LM's statement to HN AZ that the appellant touched her breast.

---

[7] *Id.* at 277.

[8] *Id.* at 100.

[9] *Id.*

[10] *Id.* at 444-45.

[11] *Id.* at 481.

**A. Excited utterance**

We review for an abuse of discretion a military judge's evidentiary rulings, reversing such rulings only where the military judge "either erroneously [applied] the law or clearly [erred] in making his or her findings of fact." *United States v. Donaldson*, 58 M.J. 477, 482 (C.A.A.F. 2003) (citation omitted).

An "excited utterance" has long been recognized as an exception to the evidentiary rule prohibiting admission of hearsay statements. MILITARY RULE OF EVIDENCE (MIL. R. EVID.) 803(2), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.). To qualify as an excited utterance:

> (1) the statement must be "spontaneous, excited, or impulsive rather than the product of reflection and deliberation"; (2) the event prompting the utterance must be "startling"; and (3) the declarant must be "under the stress of excitement caused by the event."

*United States v. Bowen*, 76 M.J. 83, 2017 CAAF LEXIS 86, at *12 (C.A.A.F. Feb. 8, 2017) (quoting *United States v. Arnold*, 25 M.J. 129, 132 (C.M.A. 1987)). Failure to meet any one of these conditions renders a statement inadmissible. *Id.* In the appellant's case, over the defense's objection, the military judge allowed HN AZ to testify that HA LM told her that the appellant touched her breast. The military judge ruled the statement was an excited utterance. However, there is no evidence the military judge actually conducted the aforementioned analysis to determine the admissibility of HA LM's statement, and the record of trial lacks sufficient evidence to find prongs one and three of the test. Consequently, we must conclude that the military judge abused his discretion in admitting HA LM's statement.

Turning to the first prong of the analysis, there is no evidence that HA LM's statement to HN AZ was "spontaneous, excited, or impulsive." *Abdirahman*, 66 M.J. at 676. To the contrary, the evidence suggests that HA LM's comment occurred as long as six hours after the alleged incident, after HA LM had taken cabs from the hotel where the incident allegedly occurred back to her original hotel, then to the base, and spoken with several other service members about the incident. "'[A] lapse of time between the event and the utterance creates a strong presumption against admissibility.'" *United States v. Feltham*, 58 M.J. 470, 475 (C.A.A.F. 2003) (quoting *United States v. Jones*, 30 M.J. 127, 128 (C.M.A. 1990)).

Additionally, there is insufficient evidence to find the critical third prong of the analysis, that at the time of HA LM's statement to HN AZ she was still under the stress or excitement caused by the startling event. *Id.* at 475. While the record of trial indicates that HA LM "seemed really sad" when she

made her comment to HN AZ, there is no indication she was still under the stress or excitement of the event.[12] For example, as trial defense counsel established on redirect examination of HN AZ, HA LM was not crying or shaking when she made her comment, and her demeanor did not cause HN AZ to seek medical attention for HA LM or encourage her to report the incident as a sexual assault.[13] Given the absence of evidence that HA LM was still under the stress or excitement of the alleged assault when she made the statement, combined with the amount of time that elapsed between the startling event and the statement, we find that the military judge abused his discretion allowing HA LM's statement into evidence.

Having found error, we must test for prejudice. *Bowen*, 2017 CAAF LEXIS 86, at *15; Art. 59, UCMJ. "Whether an error, constitutional or otherwise, was harmless is a question of law that we review *de novo*." *United States v. McCollum*, 58 M.J. 323, 342 (C.A.A.F. 2003) (citations omitted). When evaluating whether the erroneous admission of government evidence is harmless, we weigh: "(1) the strength of the government's case, (2) the strength of the defense case, (3) the materiality of the evidence in question, and (4) the quality of the evidence in question." *United States v. Berry*, 61 M.J. 91, 98 (C.A.A.F. 2005) (citations omitted). The burden is on the government to persuade us that such an error did not materially prejudice the substantial rights of the appellant. *United States v. Baumann*, 54 M.J. 100, 105 (C.A.A.F. 2000). After conducting this analysis, we find that the government has not carried its burden.

HA LM's statement to HN AZ was crucial to the government's case because it was the *only* evidence that the appellant touched HA LM's breast during the "0600 incident," when HA LM was asleep or unconscious or otherwise unaware the act was occurring. At no point during her own testimony earlier in the trial did HA LM testify that the appellant touched her breast during that encounter, only that he "groped" her. All we can discern from that testimony is that the appellant touched *some* part of HA LM's body. This absence of any specificity from HA LM makes her statement to HN AZ critical for the government's case. Without it, there is no direct evidence the appellant touched HA LM's breast at 0600. Given the significance of this statement, we cannot conclude that its erroneous admission was harmless.

---

[12] *Id.* at 276.

[13] *Id.* at 279, 283.

## B. Factual sufficiency

Questions of factual sufficiency are reviewed *de novo*. *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). A conviction is factually sufficient if, "after weighing all the evidence in the record of trial and recognizing that we did not see or hear the witnesses as did the trial court, this court is convinced of the appellant's guilt beyond a reasonable doubt." *United States v. Rankin*, 63 M.J. 552, 557 (N-M. Ct. Crim. App. 2006) (citing *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987)), *aff'd on other grounds*, 64 M.J. 348 (C.A.A.F. 2007). In performing this unique appellate function, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt," and "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *Washington*, 57 M.J. at 399. While the standard of review is no doubt high, we recognize that the phrase "beyond a reasonable doubt" does not require the evidence to be free from conflict. *Rankin*, 63 M.J. at 557. Indeed, we recognize that the factfinder at trial may "believe one part of a witness' testimony and disbelieve another." *Abdirahman*, 66 M.J. at 672 (citation and internal quotation marks omitted). Again, this review is limited to evidence properly admitted at trial. *Id.* In the appellant's case, after carefully reviewing the record of trial, evaluating the arguments of the parties, making allowances for not having observed the witnesses, and considering the unique facts of this case, we cannot be convinced of his guilt of abusive sexual contact.

In light of the manner in which it drafted the specification, the government needed to establish the following elements during trial:

> (1) that the accused committed sexual contact[14] upon the victim by touching her breast with his hand; and

---

[14] Sexual contact was defined as:

> (A) touching, or causing another person to touch, either directly or through the clothing, the genitalia, anus, groin, breast, inner thigh, or buttocks of any person, with an intent to abuse, humiliate, or degrade any person; or

> (B) any touching, or causing another person to touch, either directly or through the clothing, any body part of any person, if done with an intent to arouse or gratify the sexual desire of any person.

MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.), Part IV, ¶ 45a(g)(2); Military Judges' Benchbook, Dept. of the Army Pamphlet 27-9 at 597-98 (10 Sep 2014)

(2) that the accused did so when he knew or reasonably should
have known that the victim was asleep, unconscious, or
otherwise unaware that the sexual contact was occurring.[15]

*Accord United States v. Welch*, No. 201500184, 2016 CCA LEXIS 253,
unpublished op. (N-M. Ct. Crim. App. 21 Apr 2016). Examining the evidence
in light of these elements, we start with the "0100 incident."

### 1. *0100 incident*

We have no doubt the appellant touched HA LM's breast during the "0100
incident," thereby satisfying the first element of the offense. The appellant
repeatedly admitted to NCIS and again under oath at trial that he touched
HA LM's breast at 0100. However, the appellant also repeatedly stated to
NCIS and at trial that HA LM was awake and aware of what was happening
when he touched her. Although HA LM remembers nothing about her arrival
at a new hotel early on the morning of 18 January, evidence showed that she
left the cab, stood at the reception desk with the appellant while he rented a
room, and then walked to the room on her own power. The appellant testified
that once HA LM was in the room, she took off his jacket and asked him to
remove her shoes before she climbed into the bed. Next to her in the bed, the
appellant immediately removed her shorts, underwear, and bra and started
touching her breast. According to the appellant, HA LM reacted negatively to
his touching of her breast, and he stopped. Shortly thereafter, she began to
gag and vomited over the side of the bed. We are not convinced beyond a
reasonable doubt that the evidence concerning the "0100 incident"
established that the appellant touched HA LM's breast while she was asleep,
unconscious, or otherwise unaware that the touching was occurring.

### 2. *0600 incident*

Turning to the "0600 incident," while HA LM did testify that she awoke to
the appellant "groping" her, she never testified he "groped" her breast.
Nowhere else during the government's case-in-chief did trial counsel
establish that "groping" meant that the appellant touched HA LM's breast.
While the term grope can mean "to feel one's way" or to "feel up,"[16] and it can
have a sexual connotation, the term does not suggest that any particular
body part was touched. We believe groping alone fails to convey the body
part, breast or otherwise, that suffered the sexual contact. Consequently, we
cannot find beyond a reasonable doubt that HA LM awoke at 0600 to the

---

[15] Military Judges' Benchbook, Dept. of the Army Pamphlet 27-9 at 597-98 (10
Sep 2014).

[16] *See* Merriam Webster Dictionary, https://www.merriam-
webster.com/dictionary/grope (last visited Apr. 25, 2017).

appellant touching her *breast*. Accordingly, we must find the evidence factually insufficient to sustain a conviction under this theory as well.

In reaching this conclusion, we have considered the possibility that the military judge, as the factfinder, may have found that the appellant and HA LM were actually referring to the same event in their testimony. Aside from the fact that trial counsel did not view the evidence this way but argued throughout trial that "either one of these instances" was "sufficient to support a finding of guilty,"[17] viewing the evidence as a single encounter requires too great a leap based on the record. The specificity with which the appellant and HA LM each described the respective encounters and the lack of any independent evidence that would weave this testimony together into one event would require nothing short of speculation for us to conclude that the evidence as a whole was referring to one encounter. In short, the evidence in this case leads us to the conclusion that the evidence is factually insufficient to support a conviction for abusive sexual contact while HA LM was asleep, unconscious, or otherwise unaware.

## C. Conviction by exceptions and substitutions

While we find the evidence as presented to be factually insufficient to support a conviction that the appellant touched HA LM's breast while she was asleep, unconscious, or otherwise unaware the act was occurring, we consider whether we can nonetheless affirm the conviction via exceptions and substitutions—namely, excepting the words "touching her breast with his hand" and substituting the words "groping her body."

Under Article 66(c), UCMJ, this court "may affirm only such findings of guilty . . . as it finds correct in law and fact and determines, on the basis of the entire record, should be approved." Art. 66(c), UCMJ. In the past, military appellate courts have used this broad power to make exceptions and substitutions on appeal to affirm convictions. *See, e.g., United States v. Dodson*, 40 M.J. 634, 637 (N.M.C.M.R. 1994); *United States v. Beale*, 54 M.J. 651, 653, 655 (C. G. Ct. Crim. App. 2000). While our power under Article 66(c), UCMJ is broad, it is not unlimited. We may not amend findings on appeal in such a manner so that a conviction rests on a theory not presented to the trier of fact. *See United States v. Riley*, 50 M.J. 410, 415 (C.A.A.F. 1999) ("An appellate court may not affirm an included offense on a theory not presented to the trier of fact.") (citations and internal quotation marks omitted); *see also* RULE FOR COURTS-MARTIAL 918(a)(1), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2016 ed.) ("Exceptions and substitutions may not be used to substantially change the nature of the offense . . . .");

---

[17] Record at 444-45.

*United States v. Marshall*, 67 M.J. 418, 421 (C.A.A.F. 2009) (finding material variance prejudiced an appellant when he could not "have anticipated being forced to defend against the charge of which he was ultimately convicted.")

In the appellant's case, trial counsel argued consistently and exclusively throughout the entire trial that the appellant wrongfully touched HA LM's breast. Trial counsel never implied that the appellant might have committed the sexual contact in any other manner. Given this posture of the record, affirming the appellant's conviction via the suggested exceptions and substitutions would impermissibly convict the appellant on a theory not presented at trial. Accordingly, we decline to modify the findings in order to affirm the appellant's conviction.

**D. Sentence reassessment**

Having set aside the abusive sexual conduct conviction, we must consider the need to reassess the appellant's sentence. After setting aside a conviction, this court possesses broad discretion to reassess an appellant's sentence. *United States v. Winckelmann*, 73 M.J. 11, 15 (C.A.A.F. 2013).

Reassessing a sentence is only appropriate if we are able to reliably determine that, absent the error, the sentence would have been "at least of a certain magnitude." *United States v. Harris*, 53 M.J. 86, 88 (C.A.A.F. 2000). A reassessed sentence must not only "be purged of prejudicial error [but] also must be 'appropriate' for the offense involved." *United States v. Sales*, 22 M.J. 305, 308 (C.M.A. 1986). Such review relies on the totality of the circumstances of each case and is guided by the following "illustrative, but not dispositive, points of analysis":

> (1) Whether there has been a dramatic change in the penalty landscape or exposure;
>
> (2) Whether sentencing was by members or a military judge alone;
>
> (3) Whether the nature of the remaining offenses captures the gravamen of criminal conduct included within the original offenses and whether significant or aggravating circumstances addressed at the court-martial remain admissible and relevant to the remaining offenses;
>
> (4) Whether the remaining offenses are of the type with which appellate judges should have the experience and familiarity to reliably determine what sentence would have been imposed at trial.

*Winckelmann*, 73 M.J. at 15-16.

Applying these principles, we are confident we can reassess the appellant's sentence. Given the nature of the appellant's remaining conviction, we affirm only a sentence of 45 days' restriction.

### III. CONCLUSION

We set aside the findings to Charge II and its specification, dismiss Charge II and its specification, affirm the findings as to Charge I and its sole specification, and approve only so much of the sentence as amounts to 45 days' restriction.

Senior Judge MARKS and Judge FULTON concur.

For the Court

R.H. TROIDL
Clerk of Court