# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
COOPER, WILLIAMS, and SCHLACK
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Sergeant TYLER A. KINDSCHI**
**United States Army, Appellant**

ARMY 20240417

Headquarters, 1st Cavalry Division (Rear) (Provisional)
Javier Rivera-Rosario, Military Judge
Major Colby P. Horowitz, Acting Staff Judge Advocate

For Appellant: Colonel Frank E. Kostik, JA; Lieutenant Colonel Kyle C. Sprague, JA; Major Peter M. Ellis, JA; Captain Emily R. Ittner, JA (on brief); Colonel Frank E. Kostik, JA; Major Peter M. Ellis, JA; Captain Emily R. Ittner, JA (reply brief).

For Appellee: Colonel Richard E. Gorini, JA; Major Stephen L. Harmel, JA; Major Vy T. Nguyen, JA; Captain Teri'el M. Dixon, JA (on brief).

16 June 2026

------------------------------
MEMORANDUM OPINION
------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

COOPER, Senior Judge:

Appellant assigned three errors to this court, one of which warrants discussion but no relief.[1] Appellant argues the military judge abused his discretion by admitting two hearsay statements as excited utterances. We disagree regarding the first statement and need not test the limits on the excited utterance exception to the second statement because appellant was not prejudiced by its admission. Accordingly, we grant no relief.

---

[1] We have given full and fair consideration to the other matters raised by appellant, including those submitted pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), and determine they merit neither discussion nor relief.

A military judge sitting as a general court-martial convicted appellant, contrary to his pleas, of two specifications of abusive sexual contact and one specification of assault with intent to commit sexual assault, in violation of Articles 120, and 128, Uniform Code of Military Justice [UCMJ], 10 U.S.C. §§ 920 and 928. The military judge sentenced him to a bad-conduct discharge, confinement for 120 days,[2] total forfeiture of pay and allowances, and reduction to the grade of E-1.

## BACKGROUND

While deployed to Poland, appellant and the victim, members of the same unit, watched a movie in the bunk area of a tent with three other soldiers. Sitting next to the victim on a twin bed under a shared blanket, appellant slowly slid his hand up her inner thigh. The victim shook her head "no," and appellant responded by squeezing her leg "really hard" and sliding his hand up her thigh until he "touch[ed] [her] vaginal area" over her clothes. The victim again shook her head "no," and then appellant grabbed her hand and put it on his penis over his clothes. Appellant released the victim's hand when someone else entered the room and the victim left for the restroom.

Appellant immediately followed the victim outside, pinned her against a generator, and kissed her face, neck, and lips. The victim testified she was "crying," "shaking, asking him to stop and he wouldn't." Appellant pulled his shorts down and made the victim touch his bare penis. Then, he pulled her shorts down, while saying he wanted to "fuck the shit out of [her]." Next, the victim testified appellant began "thrusting his penis" against her body while she was "begging him to stop." Appellant eventually stopped and told the victim to meet him at his bed at "2 or 3 o'clock in the morning."

The victim returned to the bunk area. She testified she was there for "what felt like" two or three minutes thinking about what to do, fearing appellant would assault her again. Eventually, she decided to go get help and left the tent. Eyewitnesses testified the victim was inside the tent for fifteen to twenty minutes, but also admitted they were focused on the movie and not on her.

Upon looking for a trusted friend, the victim ran into SPC ▉ who testified the victim appeared "scared" and "shaken up." SPC ▉ testified the victim was "hyperventilating" and spoke fast when she told him appellant tried to kiss her.

The next morning, the victim discovered a bruise on her inner thigh from appellant's assault. When she saw the bruise, she "started crying even more." Soon

---

[2] The military judge sentenced appellant to 90 days of confinement for each specification of abusive sexual contact and 120 days of confinement for the specification of assault with intent to commit sexual assault, to be served concurrently.

thereafter, the victim saw CPL ██. CPL ██ described the victim as "nervous," "hyperventilating," "shaky, crying, tears running down her face." When the victim calmed down "[e]nough to be coherent," she told CPL ██ that appellant touched her leg while watching a movie and followed her outside, that appellant "cornered her behind the tents," and that appellant "tr[ied] to kiss her and hold her down and take her pants off." The victim showed CPL ██ the bruise and said appellant caused it.

At trial, the defense made hearsay objections to the victim's statements to SPC ██ and CPL ██. In response, the government argued the excited utterance exception applied. The military judge convened two Article 39(a) hearings during trial to individually address the statements. After hearing evidence and arguments on the statements at issue, the military judge overruled defense's objections and admitted the victim's statements to both SPC ██ and CPL ██ as excited utterances.

## LAW AND DISCUSSION

### A. Applicable Law

"We review a military judge's ruling admitting or excluding an excited utterance [for] an abuse of discretion." *United States v. Henry*, 81 M.J. 91, 95 (C.A.A.F. 2020) (internal quotation marks omitted). This court "will only reverse if the military judge's findings of fact are clearly erroneous or if his decision is influenced by an erroneous view of the law." *Id.* (internal quotation marks omitted). "Generally, military judges are, of course, granted a wide degree of deference when making discretionary decisions during trial." *United States v. Ramirez*, 84 M.J. 173, 176 (C.A.A.F. 2024). This is especially the case where a military judge provides his findings and analysis on the record. *Id.*

Hearsay is an out-of-court statement offered at trial to prove the truth of the matter asserted and is inadmissible unless an exception applies. Military Rules of Evidence [Mil. R. Evid.] 801(c) and 802. One exception, excited utterance, is "[a] statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." Mil. R. Evid. 803(2). An excited utterance is an exception to hearsay because the "'implicit premise' . . . is 'that a person who reacts to a startling event or condition' while under the stress of excitement caused thereby will speak truthfully because of a lack of opportunity to fabricate.'" *United States v. Donaldson*, 58 M.J. 477, 483 (C.A.A.F. 2003) (quoting *United States v. Jones*, 30 M.J. 127, 129 (C.M.A. 1990)) (further internal quotation marks omitted). However, "[t]his premise becomes more tenuous where the exciting influence has dissipated and one has had the opportunity to deliberate or fabricate." *Id.* Even still "some courts and commentators have accepted the premise that even after the excitement of a startling event has dissipated, a subsequent statement may constitute an excited utterance if a renewal of the excitement provides an adequate safeguard against fabrication." *Id.*

To be admissible as an excited utterance under Mil. R. Evid. 803(2), the proponent of the statement must satisfy three elements: "(1) the statement must be 'spontaneous, excited or impulsive rather than the product of reflection and deliberation'; (2) the event prompting the utterance must be 'startling'; and (3) the declarant 'must be under the stress of excitement caused by the event.'" *Henry*, 81 M.J. at 96 (quoting *United States v. Arnold*, 25 M.J. 129, 132 (C.M.A. 1987)).

When analyzing the third element, the Court of Appeals for the Armed Forces has provided six factors "to help determine whether the declarant was still under the stress of excitement caused by the startling event." *Id.* at 97 (citing *Donaldson*, 58 M.J. at 483). Those factors include: "'the lapse of time between the startling event and the statement, whether the statement was made in response to an inquiry, the age of the declarant, the physical and mental condition of the declarant, the characteristics of the event, and the subject matter of the statement.'" *Donaldson*, 58 M.J. at 483 (quoting *Reed v. Thalacker*, 198 F.3d 1058, 1061 (8th Cir. 1999)).

*B. Victim's Statement to SPC* ▮

Appellant alleges the victim's statement to SPC ▮ was not "spontaneous, excited or impulsive," and the victim was no longer under the stress of the excitement. We disagree and find the military judge did not abuse his discretion in admitting the victim's statement to SPC ▮ as an excited utterance.

We give more deference to a military judge's ruling when he lays out his facts, analysis, and findings on the record. *United States v. Smith*, 83 M.J. 350, 355 (C.A.A.F. 2023). Here, the military judge articulated the correct foundational test, reasonably applied the law to the facts, and ultimately found: (1) the victim experienced a startling event—the assault by appellant; (2) "in a period of minutes after the incident occurred she made statements" to SPC ▮, and (3) she "made the statement while she was still in a state of nervous excitement." Evidencing her state of excitement, the military judge cited to SPC ▮ testimony regarding the victim's behavior—upset, hyperventilating, uncomfortable, talking fast—and also referenced the victim's testimony that she "was scared" and "felt unsafe."[3]

The military judge acknowledged the discrepancy in the witnesses' testimony regarding the elapsed time between the assault and the out of court statements, reasonably concluding the evidence showed the declarant's persisting stress of excitement. The military judge correctly noted that "the focus is not on the lapse of time from the moment of the startling event, but whether [the victim] is under the stress of excitement so as to lack opportunity to reflect and to fabricate an untruthful statement." He found the evidence demonstrated a "young, inexperienced person

---

[3] As our superior court has previously found, "being scared is simply a heightened state of excitement." *Henry*, 81 M.J. at 99.

who is confused after enduring a startling event." Additionally, she continued to feel "scared" and "felt unsafe" while in the tent, given appellant's parting words directing her to his bed at 2 or 3 o'clock in the morning. Ultimately, the military judge's finding that the victim was in the bunk area for a short time, "but not enough for the effects of the startling event to dissipate[,]" was reasonable.

The military judge considered witness testimony concerning the victim's post-assault behavior upon her re-entry to the bunk room. However, because the bunk room witnesses were more focused on the movie than they were on the victim in a dark tent, he reasonably afforded more weight to SPC ███ observations of the victim, as SPC ██ was focused on her. Given SPC ███ description of the victim's behavior at the time she made the relevant statements, it was reasonable for the military judge to conclude that the victim was still under the stress of excitement caused by appellant's assault.

The military judge's ruling on the excited utterance exception was not clearly erroneous, was correct in law, and was reasonable. *See United States v. Wicks*, 73 M.J. 93, 98 (C.A.A.F. 2014) (The abuse of discretion standard requires "more than a mere difference of opinion. The challenged action must be arbitrary . . . , clearly unreasonable, or clearly erroneous."). Therefore, we find no abuse of discretion.

### C. Victim's Statements to CPL ██

The admission of the victim's statements to CPL ██ is a closer call. However, we need not determine whether the military judge abused his discretion because even if we assume error, we find no prejudice.

This court conducts a review for prejudice de novo. *United States v. King*, 83 M.J. 115, 120 (C.A.A.F. 2023) (citation omitted). Errors in the admission of hearsay do not implicate an appellant's constitutional right to confrontation if the declarant of the hearsay was subject to cross-examination at trial, such as in this case. *See United States v. Pablo*, 53 M.J. 356, 359 (C.A.A.F. 2000). "For nonconstitutional evidentiary errors, the test for prejudice 'is whether the error had a substantial influence on the findings.'" *United States v. Kohlbek*, 78 M.J. 326, 334 (C.A.A.F. 2019) (quoting *United States v. Fetrow*, 76 M.J. 181, 187 (C.A.A.F. 2017)). "In conducting the prejudice analysis, this court weighs: (1) the strength of the Government's case, (2) the strength of the defense case, (3) the materiality of the evidence in question, and (4) the quality of the evidence in question." *Kohlbek*, 78 M.J. at 334 (internal quotation marks omitted). In applying these factors, we find the admission of the victim's statements to CPL ██ did not have a substantial influence on the findings in this case.

The government's case was strong. The victim provided direct testimony of the assault. She made an outcry within 20 minutes of the assault and reported it

5

within 24 hours.  Moreover, at least four other witnesses testified about the victim's behavior post-assault.  During the first 24 hours, two outcry witnesses testified she was hyperventilating, shaking, upset, and crying.  Over the following days and weeks, other witnesses testified that there was a marked change in her demeanor.  She "was emotional" at work and "definitely had a hard time coping."  She was "crying a lot" and "didn't seem like she wanted to talk to anyone."  Finally, the government admitted pictures of the bruising on the victim's thigh—which she alleged came from the accused—that corroborated her testimony.

In comparison to the government's case, the defense case was weak.  The defense focused on the inconsistencies between the victim's testimony and testimony from other witnesses involving minor details such as how long the victim remained in the bunk room after her return and how upset SPC ██ was when she told him.  Additionally, the defense relied on the bunk room soldiers' testimony that the victim was "normal" when she came back from the restroom as proof she fabricated the incident.  They also highlighted the omitted details from the victim's prior statements to argue reasonable doubt.  However, the victim reasonably explained the omissions, and given the low probative value of the inconsistencies, the defense failed to overcome the strength of the government's case.

The victim's statements to CPL ██ were not material.  Contrary to the appellant's assertions in his reply brief, the direct evidence of the assault originated from the victim herself, rather than from CPL ██.  Her report to CPL ██ offered little weight to the strength of the government's evidence, given the victim's in-court testimony containing considerably more detail.  The true probative value of CPL ██ testimony was not in the victim's out of court statements, but in CPL ██ direct observations of the victim's severe distress after discovering the bruising.

The quality of the victim's statements to CPL ██ was low.  The victim only shared a part of the story and did not tell CPL ██ anything about the sexual contacts inside the tent that constituted Specification 1 and 2 of Charge I.  Moreover, the victim's statements to CPL ██ regarding appellant touching her leg and assaulting her by the generator were not as descriptive as the more detailed in-court testimony of the victim.

After weighing the *Kohlbek* factors, we find the admitted statements to CPL ██ did not have a substantial influence on the findings and therefore, any admission, even if erroneous, was not prejudicial.

## CONCLUSION

The findings of guilty and the sentence are AFFIRMED.

Judge WILLIAMS and Judge SCHLACK concur.

FOR THE COURT:

JAMES W. HERRING, JR.
Clerk of Court