# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
BURTON, RODRIGUEZ, and FLEMING
Appellate Military Judges

**UNITED STATES, Appellant**

v.

**Sergeant First Class DASHAUN K. HENRY**
**United States Army, Appellee**

ARMY MISC 20190688

Headquarters, United States Army Maneuver Support Center of Excellence
S. Charles Neill, Military Judge
Colonel Christopher B. Burgess, Staff Judge Advocate

For Appellant: Colonel Steven P. Haight, JA; Lieutenant Colonel Wayne H. Williams, JA; Captain Allison L. Rowley, JA; Major Jonathan S. Reiner, JA (on brief and reply brief).

For Appellee: Colonel Elizabeth G. Marotta, JA; Lieutenant Colonel Tiffany D. Pond, JA; Major Jack D. Einhorn, JA; Captain Benjamin A. Accinelli, JA; Captain Jason X. Hamilton, JA (on brief).

3 June 2020

---

MEMORANDUM OPINION ON RECONSIDERATION
AND ACTION ON APPEAL
BY THE UNITED STATES FILED PURSUANT TO
ARTICLE 62, UNIFORM CODE OF MILITARY JUSTICE

---

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

BURTON, Senior Judge:

The United States appeals the ruling of a military judge denying the introduction of hearsay statements as present sense impressions and excited utterances under Military Rules of Evidence [Mil. R. Evid.] 803(1) and 803(2).[1] We

---

[1] We have jurisdiction over this appeal under Article 62, Uniform Code of Military Justice, 10 U.S.C. § 862 [UCMJ]. The parties raise no jurisdictional issues to our

(continued . . .)

issued a memorandum opinion in this case on 13 January 2020 affirming the military judge's ruling. *See United States v. Henry*, Army MISC 20190688, 2020 CCA LEXIS 9 (Army Ct. Crim. App. 13 Jan. 2020) (mem. op.). Subsequently, the United States moved for reconsideration of this court's decision.[2] To the extent this court's 13 January 2020 decision referenced that a declarant's statement alone is insufficient to satisfy the foundation for an excited utterance, we clarify that our holding was based on the requirements for laying the foundation for an excited utterance as set forth in *United States v. Arnold*, 25 M.J. 129 (C.M.A. 1987) and *United States v. Donaldson*, 58 M.J. 477 (C.A.A.F. 2003).

Having reconsidered our previous decision, we find the military judge applied the law correctly and did not abuse his discretion in finding the government failed to establish a sufficient foundation for the statements to be admitted as either present sense impressions or excited utterances. Accordingly, we affirm the military judge's ruling.

## BACKGROUND

The accused is charged with one specification of willfully disobeying a superior commissioned officer, one specification of making a false official statement, one specification of assault consummated by a battery, and one specification of child endangerment in violation of Articles 90, 107, 128, and 134, UCMJ, 10 U.S.C. §§ 890, 907, 928, and 934. The charged offenses involve the accused's wife, KH, while the allegation of child endangerment involves the accused's ten year-old son, JH.

On 29 December 2018, at approximately two o'clock in the morning, Staff Sergeant (SSG) DC heard a knock at his on-post housing front door. Staff Sergeant DC opened the door and saw JH, whom he recognized as his neighbors' son. JH was wearing pajamas and screamed, "He's beating my mom. He's beating my mom." Staff Sergeant DC invited JH inside and described JH's demeanor as appearing "afraid." Staff Sergeant DC went upstairs to change. On his way back downstairs, he saw JH run outside the house back towards his home, shouting, "You better not hit her again."

---

(. . .continued)
attention nor have we independently identified any. Unlike our reviews under Article 66, UCMJ, our review is limited solely to questions of law.

[2] Appellee's suggestion for en banc reconsideration was not adopted. *United States v. Henry*, ARMY MISC 20190688 (Army Ct. Crim. App. 2 Jun. 20) (order).

Several minutes later, SSG DC saw the backdoor of the accused's home "fling open," and KH and her children, including JH, running outside with the accused in pursuit. They ran towards SSG DC's front porch. Staff Sergeant DC testified that KH appeared afraid and "like she had been crying." As KH ran towards SSG DC's home, she shouted, "He hit me. He hit me."

KH and her children ran inside SSG DC's home. The accused returned to his home. The children sat on the couch while KH "cowered by the coat closet," appearing "afraid." Staff Sergeant DC asked KH if she wanted him to call 911 and KH indicated yes. KH stated to the 911 operator, "My husband has hit me a couple of times over the past few hours." Shortly thereafter, the military police arrived at SSG DC's home. The police observed red marks on one of KH's cheeks and a scratch on her neck.

At trial, KH and JH did not testify for the government. The government sought to introduce into evidence four statements made by KH and JH for the truth of the matter asserted, as excited utterances and present sense impressions. Specifically, through the testimony of SSG DC, the government sought to introduce JH's statements to SSG DC: (1) "He's beating my mom. He's beating my mom;" and (2) "You better not hit her again." Also through the testimony of SSG DC, the government sought to introduce KH's statement to SSG DC: (3) "He hit me. He hit me." Finally, the government sought to introduce the 911 recording of KH stating: (4) "My husband has hit me a couple of times over the past few hours."

The military judge denied the admission of all four statements. Regarding the excited utterance exception, the military judge applied the three-prong test set forth by our Superior Court in *United States v. Arnold*, 25 M.J. 129, 132 (C.M.A. 1987), and found the government failed to lay the foundation to demonstrate that the declarants, KH and JH, made the statements spontaneously after observing a startling event, or while still under the stress of the startling event. Regarding the present sense impression exception, the military judge held the government failed to lay an adequate foundation for all four statements. The military judge noted in his ruling the government's failure to demonstrate when the alleged assault occurred, and that the proffered statements were made during or immediately after the alleged event.

Following the military judge's ruling, the government filed a timely notice of appeal pursuant to Rule for Courts-Martial 908, challenging whether the military judged erred when he found that the four statements did not constitute excited utterances or present sense impressions.

## LAW AND DISCUSSION

"In an Article 62, UCMJ, appeal, this court reviews the military judge's decision directly and reviews the evidence in the light most favorable to the party which prevailed at trial." *United States v. Pugh*, 77 M.J. 1, 3 (C.A.A.F. 2017).

A military judge's decision to exclude evidence is reviewed for an abuse of discretion. *United States v. Bowen*, 76 M.J. 83, 87 (C.A.A.F. 2017). "An abuse of discretion occurs when a military judge either erroneously applies the law or clearly errs in making his or her findings of fact." *United States v. Donaldson*, 58 M.J. 477, 482 (C.A.A.F. 2003). These standards also apply to interlocutory appeals under Article 62, UCMJ. *United States v. Michael*, 66 M.J. 78, 80 (C.A.A.F. 2008); *see also United States v. Mitchell*, 76 M.J. 413, 417 (C.A.A.F. 2017). "[T]he abuse of discretion standard of review recognizes that a judge has a range of choices and will not be reversed so long as the decision remains within that range." *United States v. Gore*, 60 M.J. 178, 187 (C.A.A.F. 2004) (citation omitted); *see also United States v. Criswell*, 78 M.J. 136, 141 (C.A.A.F. 2018).

Military Rule of Evidence 802 generally prohibits admission of hearsay at trial. Hearsay is defined as "a statement that the declarant does not make while testifying at the current trial or hearing; and a party offers in evidence to prove the truth of the matter asserted." Mil. R. Evid. 801(c). However, Mil. R. Evid. 803 provides several exceptions to the rule against hearsay, regardless of whether the declarant is available as a witness, two of which are relevant in this appeal: Present Sense Impression and Excited Utterance. *See* Mil. R. Evid. 803(1) and (2).

### A. Excited Utterance

Military Rule of Evidence 803(2) defines excited utterance as: "A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." "The fundamental principle of the excited utterance hearsay exception is that a declarant's ability to reflect and shade the truth is temporarily suspended after a startling event, so that the utterance which then occurs is a spontaneous and sincere response to the actual sensations and perceptions already produced by the external shock." *United States v. Keatts*, 20 M.J. 960, 963 (A.C.M.R. 1985) (internal quotation and citation omitted).

In *Arnold*, our Superior Court adopted a three-pronged test to determine whether a hearsay statement qualifies as an excited utterance under Mil. R. Evid. 803(2): (1) the statement must be spontaneous, excited or impulsive rather than the product of reflection and deliberation; (2) the event prompting the statement must be startling; and (3) the declarant must be under the stress of excitement caused by the event. 25 M.J. at 132 (quotations and citations omitted); *see also Bowen*, 76 M.J. at 88.

*1. "He's beating my mom. He's beating my mom."*

The government attempted to lay the foundation for JH's statement, "He's beating my mom. He's beating my mom," through SSG DC's testimony. Staff Sergeant DC testified that JH knocked on his front door at two o'clock in the morning, in December, in his pajamas, yelled the statement as soon as SSG DC opened the door, and appeared frightened.

In his ruling, the military judge applied the *Arnold* test and found that he could not determine whether JH was reacting to a startling event at the time he made the statement.[3] In determining whether JH was under the stress of a startling event at the time of his statement, the military judge considered and applied the *Donaldson* factors. 58 M.J. at 483 (Courts look to a number of factors, such as "the lapse of time between the startling event and the statement, whether the statement was made in response to an inquiry, the age of the declarant, the physical and mental condition of the declarant, the characteristics of the event, and the subject matter of the statement.").[4]

In the instant case, the government presented circumstantial evidence which described JH's behavior as consistent with having witnessed a startling event. However, SSG DC's testimony regarding this circumstantial evidence is unreliable as he responded he "assumed so" several times to foundational questions.[5] In whole, the military judge was presented with uncertain testimony, no evidence of precisely what the startling event was, whether JH witnessed it, or when it occurred. Accordingly, we find the military judge applied the correct law and did not abuse his discretion in finding there was insufficient evidence that JH's statement was

---

[3] The military judge relied on this court's recent opinion in *United States v. Henley,* ARMY 20180175, 2019 CCA LEXIS 384 (Army Ct. Crim. App. 27 Sep. 2019) (mem. op.), which applied the *Arnold* three-prong test.

[4] We pause to emphasize the critical importance for military judges to specifically detail the findings of fact that are the predicate for their rulings.

[5] The uncertainty in Staff Sergeant DC's testimony was further highlighted by his inconsistency regarding the precise words of KH's statement. Initially, SSG DC testified in an Article 39(a) hearing outside the presence of the panel that KH stated, "He's beating my mom. He's beating my mom." However, in a later Article 39(a) hearing outside the presence of the panel, SSG DC testified that KH stated, "He beat my mom. He beat my mom." Although a minor grammatical inconsistency in tense, in this situation, the tense is highly relevant because it is the difference between an ongoing startling event and an event that occurred at some point in the past.

spontaneous, prompted by a startling event, while JH was still under the stress of excitement caused by the event.

### 2. *"You better not hit her again."*

The government also sought to introduce, as an excited utterance, JH's statement, "You better not hit her again." The foundation for this statement came from SSG DC's testimony that shortly after JH appeared at his door, JH ran back outside the house towards his home, shouting the statement. Similar to the previous statement, JH did not testify, and this was the only evidence regarding the circumstances of the statement.

The military judge found the government did not satisfy the *Arnold* test due to the lack of foundation that JH witnessed a starting event and that he was still under the excitement of the event when he made the statement. Again, while circumstantial evidence may support a foundation for an excited utterance, we find the military judge applied the correct law and did not abuse his discretion in finding that the circumstantial evidence presented in this case did not satisfy the *Arnold* test.

### 3. *"He hit me. He hit me."*

Next, the government sought to introduce KH's statement to SSG DC, "He hit me. He hit me." The government's foundation for this statement relied on SSG DC's testimony that he saw the backdoor of the accused's home "fling open," and KH and her children ran outside with the accused in pursuit. KH made the statement as she ran towards SSG DC's front porch, appearing afraid, and "like she had been crying." Staff Sergeant DC testified he did not see any visible injuries on KH. Shortly after 0330, law enforcement officers, DB and JP, arrived at SSG DC's home. DB testified he observed "a red mark on [KH's] right cheek and redness on her left." JP testified he noticed "redness around [KH's] cheek area, and "[a] scratch to [KH's] neck."

The military judge applied the *Arnold* test and found, "[t]here was insufficient evidence to show when the alleged assault occurred or the circumstances surrounding the statement in order to determine whether it was spontaneous as opposed to being the product of reflection."

The government attempted to lay the foundation for KH's statements with circumstantial evidence of KH's behavior and demeanor, which might be consistent with someone who just witnessed a startling event. However, the foundation was weakened by SSG DC's uncertain testimony that he assumed that KH had just witnessed a startling event. The military judge also noted that there was conflicting testimony regarding the existence and extent of injury observed on KH. Although the government was not required to show the precise time of the alleged startling

event that prompted this statement, without such evidence the military judge was left with a concern that "[a] lapse in time between a startling event and the excited utterance 'create[s] a strong presumption against admissibility." *United States v. Feltham*, 58 M.J. 470, 475 (C.A.A.F. 2003) (quoting *Jones*, 30 M.J. at 129). Accordingly, we find the military judge applied the correct law and did not abuse his discretion in finding that there was insufficient evidence that KH's statement was spontaneous, prompted by a startling event, while KH was still under the stress of excitement caused by the event.

### 4. *"My husband has hit me a couple of times over the past few hours."*

Finally, the government sought to introduce KH's statement to the 911 operator, "My husband has hit me a couple of times over the past few hours." The foundation for this statement came primarily from SSG DC and the 911 recorded phone call. Staff Sergeant DC testified that he asked KH if she wanted him to call 911, to which she indicated she did. The 911 call occurred at 0333. Staff Sergeant DC testified that when he called 911, KH was in the bathroom and he heard "what sounded like [to him] throwing up." When KH came out of the bathroom, she appeared tearful, but that she had calmed down "a little bit." As KH spoke to the 911 operator, SSG DC testified that she still appeared "upset," but she was not "afraid," and no longer "cowering in the corner."

The military judge found that KH's statement during the 911 call was not made while KH was still under the stress of a startling event. For the first minute of the 911 call, SSG DC spoke to the operator, but then passed the phone to KH to explain what happened. Notably, KH had a calm demeanor during the call. The call occurred approximately one hour and a half after KH came to SSG DC's house. In other words, even if there was a startling event, KH was far removed from it. Further, KH made the statement in response to the 911 operator's question, "Can you tell me what is going on?" Thus, JH's statement was more likely in response to the 911 question, as opposed to the product of impulse or instinct. *See, e.g., Jones*, 30 M.J. at 129. We find the military judge applied the correct law and did not abuse his discretion in finding that there was insufficient evidence that KH's statement was spontaneous, prompted by a startling event, while KH was still under the stress of excitement caused by the event.

### B. *Present Sense Impression*

The government also sought to introduce all four of the statements discussed above as present sense impressions pursuant to Mil. R. Evid. 803(1). A present sense impression is "a statement describing or explaining an event or condition, made while or immediately after the declarant perceived it." Mil. R. Evid. 803(1). "[N]o military appellate court has defined 'immediately thereafter' . . . beyond 'as soon as the opportunity arises.'" *United States v. Brown*, 2018 CCA LEXIS 107, at

*30 (Army Ct. Crim. App. 28 Feb. 2018) (citations omitted). The proper determination regarding whether a statement was made contemporaneously with an event will always turn on the specific facts of each individual case. *See id.* at *32.

In the instant case, the military judge ruled that all four statements were not present sense impressions. The military judge's ruling focused on the government's inability to demonstrate when the alleged assault occurred and whether "the statements were made while or immediately after [JH and KH] perceived [the alleged assault]." Under the specific facts of this case, the government failed to show that the statements were sincere and spontaneous as opposed to the product of reflection. Accordingly, we find the military judge applied the correct law and did not abuse his discretion in finding that there was an insufficient foundation for each of the four statements to qualify as present sense impressions.

## CONCLUSION

The government's appeal pursuant to Article 62, UCMJ, is DENIED. We AFFIRM the military judge's ruling denying admission of all four statements as present sense impressions and excited utterances.

The record will be returned to the military judge for action not inconsistent with this opinion and R.C.M. 908(c)(3).

Judge RODRIGUEZ and Judge FLEMING concur.

FOR THE COURT:

JOHN P. TAITT
Chief Deputy Clerk of Court