*This opinion is subject to revision before publication*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

_____

## UNITED STATES
Appellant

**v.**

## Dashaun K. HENRY, Sergeant First Class
United States Army, Appellee

**No. 20-0342**

Crim. App. No. 20190688

Argued October 28, 2020—Decided April 9, 2021

Military Judge: S. Charles Neill

For Appellant: *Major Jonathan S. Reiner* (argued); *Colonel Steven P. Haight, Lieutenant Colonel Wayne H. Williams, and Captain Allison L. Rowley* (on brief).

For Appellee *Captain Catherine E. Godfrey* (argued). *Colonel Michael C. Friess, Lieutenant Colonel Angela D. Swilley, and Major Jodie L. Grimm* (on brief).

Amici Curiae for Appellant: *Lynn Hecht Schafran*, Esq., *William D. Dalsen*, Esq., and *James R. Anderson*, Esq. (on brief) (on behalf of Legal Momentum and Sanctuary for Families).

Chief Judge STUCKY delivered the opinion of the Court, in which Judge SPARKS and Senior Judge EFFRON joined. Judge OHLSON and Judge MAGGS filed separate dissenting opinions.

_____

Chief Judge STUCKY delivered the opinion of the Court.

A military judge granted the accused's motion to suppress four statements as hearsay, rejecting the Government's contention that they were excited utterances, or, in the alternative, present sense impressions. The Government appealed the military judge's ruling to the United States Army Court of Criminal Appeals (CCA) under Article 62, 10 U.S.C. § 862 (2018). The CCA concluded that the military judge did not abuse his discretion and affirmed the trial court's judgment. The Army Judge Advocate General then certified the issue to

this Court.[1] We hold that the military judge abused his discretion in refusing to admit the four statements under the excited utterance exception to the rule against hearsay.

## I. Background

Early, one cold, late December morning, Staff Sergeant (SSG) DC was awoken by a pounding at his door. A quick look revealed that it was JH, the ten-year-old son of SSG DC's neighbor, the accused. Despite the cold, JH was clothed only in his pajamas. JH looked frightened and his exclamations suggested why: "He's beating my mom. He's beating my mom." SSG DC invited JH inside, and went upstairs to change his clothes. As he came back downstairs, SSG DC saw JH run back towards his home, shouting, "[y]ou better not hit her again." Sometime later, the backdoor of the accused's home was "fl[u]ng open" and KH and her children, including JH, ran towards SSG DC's front porch, with the accused in pursuit. As she fled the accused, KH, "crying and upset," said, "He hit me. He hit me."

Once KH and her children were inside SSG DC's home, the accused returned to his own home. KH "cowered over by the coat closet" while her children sat on DC's couch. KH indicated she wanted SSG DC to call the MPs, and she told the 911 operator that her husband had "been beating me for the last couple of hours." When the MPs arrived soon after, they observed red marks on one of KH's cheeks and a scratch on her neck.

At trial, the Government sought to introduce the following four statements for the truth of the matter asserted, under the excited utterance or present sense impressions exceptions to the rule against hearsay:

(1) JH's statement to SSG DC: "He's beating my mom. He's beating my mom."

(2) JH's exclamation: "You better not hit her again."

(3) KH's statement to SSG DC: "He hit me. He hit me."

---

[1] The Government certified the following issue: Did the military judge abuse his discretion in excluding the four statements on which the prosecution sought interlocutory appellate review, pursuant to Article 62, UCMJ?

(4) KH's statement to the 911 operator that her husband had "been beating me for the last couple of hours."

In an Article 39(a) session on the admissibility of these statements, KH testified for the defense. She stated that she had told JH to run over to SSG DCs house and tell him to call 911, and she lied when she told SSG DC that the accused had beaten her. At the Article 39(a) session, the military judge denied the admission of the statements as exceptions to hearsay or under the residual hearsay exception. He did not make a finding that KH's recantation was at all credible, nor did he reference it his ruling.[2]

At trial, the Government attempted to introduce the four statements under the excited utterance or present sense impression exception to hearsay. The military judge denied the admission of all four statements on the grounds that the Government failed to lay a proper foundation, specifically that there was insufficient evidence as to when the alleged assault occurred.

## II. Law

### A. Standard of Review

" 'In an Article 62, UCMJ, appeal, this Court reviews the military judge's decision directly and reviews the evidence in the light most favorable to the party which prevailed at trial.' " *United States v. Lewis*, 78 M.J. 447, 452 (C.A.A.F. 2019) (quoting *United States v. Pugh*, 77 M.J. 1, 3 (C.A.A.F. 2017)). We review a "military judge's ruling admitting or excluding an excited utterance [for] an abuse of discretion." *United States v. Feltham*, 58 M.J. 470, 474–75 (C.A.A.F. 2003). We will only reverse "if the military judge's findings of fact are clearly erroneous or if his decision is influenced by an erroneous view of the law." *Id.* (internal quotation marks omitted) (citation omitted).

---

[2] The only potential reference to KH's recantation was in his ruling on JH's statement. He discounted JH's statements as lacking personal knowledge, noting they may have been motivated by "hearing a commotion or repeating something his mother told him while she was having an intoxicat[ed] argument with the accused."

## B. Personal Knowledge

Military Rule of Evidence (M.R.E.) 602, which is taken verbatim from Fed. R. Evid. 602, requires that a witness must have personal knowledge in order to testify. Hearsay declarants are, of course, witnesses, and so also must have personal knowledge in order for their statements to be admissible. Fed. R. Evid. 104(a) advisory committee's note to 1972 amendment; *see, e.g.*, *Bemis v. Edwards*, 45 F.3d 1369, 1373 (9th Cir. 1995). In the case of a hearsay declarant, the personal knowledge does not need to be conclusively established before the testimony is admitted; rather, "it is enough, if the declarant 'so far as appears [has] had an opportunity to observe the fact declared.'" Fed. R. Evid. 104(a) advisory committee's note to 1972 amendment (quoting 1 McCormick on Evidence § 10 at 19) (interpolation in original); *see, e.g.*, *United States v. Hickey*, 917 F.2d 901, 904 (6th Cir. 1990) (explaining that "[t]estimony should not be excluded for lack of personal knowledge unless no reasonable juror could believe that the witness had the ability and opportunity to perceive the event that he testifies about"). When it comes to personal knowledge, the military judge's role is to determine whether there is sufficient evidence for a reasonable court member to find that declarant had personal knowledge of his declaration. *See* M.R.E. 104(b); Stephen A. Saltzburg et al., 2 *Military Rules of Evidence Manual*, § 602.02[3], at 6-19 to 6-20 (8th ed. 2015). This is not a high bar.

## C. Excited Utterance

"A statement relating to a startling event or condition, made while the declarant was under the stress of excitement caused by the event or condition," is admissible as an exception to the general prohibition on hearsay. M.R.E. 803(2); *see Manual for Courts-Martial, United States*, Analysis of the Military Rules of Evidence app. 22 at A22-63 (2016 ed.) [hereinafter Drafters' Analysis] ("Rule 803(2) is taken from the Federal Rule [803(2)] verbatim."). "The implicit premise [of the exception] is that a person who reacts 'to a startling event or condition' while 'under the stress of excitement caused' thereby will speak truthfully because of a lack of opportunity to fabricate." *United States v. Jones*, 30 M.J. 127, 129 (C.M.A. 1990) (citation omitted); *see also White v. Illinois*, 502 U.S. 346, 357 (1992) ("[A] statement that qualifies for admission

under a 'firmly rooted' hearsay exception is so trustworthy that adversarial testing can be expected to add little to its reliability.") (quoting *Idaho v. Wright*, 497 U.S. 805, 820–21 (1990))).

For a statement to qualify as an excited utterance: (1) the statement must be "spontaneous, excited or impulsive rather than the product of reflection and deliberation"; (2) the event prompting the utterance must be "startling"; and (3) the declarant must be "under the stress of excitement caused by the event." *United States v. Arnold*, 25 M.J. 129, 132 (C.M.A. 1987) (internal quotation marks omitted) (citations omitted).

Relevant to the third prong of this inquiry are "the physical and mental condition of the declarant" and "the lapse of time between the startling event and the statement." *United States v. Donaldson*, 58 M.J. 477, 483 (C.A.A.F. 2003) (internal quotation marks omitted) (citation omitted). However, "[i]t is the totality of the circumstances, not simply the length of time that has passed between the event and the statement, that determines whether a hearsay statement was an excited utterance." *United States v. Belfast*, 611 F.3d 783, 817 (11th Cir. 2010). Further, M.R.E. 803(2) does not require corroboration—the declarant's statement is sufficient to prove the existence of the startling event. Drafters' Analysis at A22-63.

The proponent of the excited utterance has the burden to show by a preponderance of the evidence that each element is met. *See Bourjaily v. United States*, 483 U.S. 171, 175 (1987) (explaining that though a court determines admissibility of evidence, the Supreme Court has "traditionally required that these matters be established by a preponderance of proof"); *see also United States v. Mehanna*, 735 F.3d 32, 56 (1st Cir. 2013).

### III. Discussion

The military judge excluded all four statements due to lack of a proper foundation. He based this finding primarily on three alleged defects. First, the Government did not establish *when* the alleged startling event occurred. Second, because SSG DC did not know the declarants well, he could not say whether they were speaking while under the stress of an exciting event. Third, the Government had not shown that JH had personally witnessed the assault that he described. The

military judge also stated that KH's injuries did not match her description of the assault. We address each purported defect in turn.

## A. Timing of the Alleged Assault

In *Arnold*, we listed three elements that must be met before a statement can qualify as an excited utterance: (1) the statement must be spontaneous; (2) the event must be startling; and (3) the declarant must be under stress caused by the startling event. 25 M.J. at 132.

Elements one and three implicate the timing of the event. The first element implicates the timing of the event, as the closer in time, the less likely the statements are the result of careful consideration (and possible mendacity). We elaborated on the third element in *Donaldson*, listing six factors to help determine whether the declarant was still under the stress of excitement caused by the startling event. *Donaldson*, 58 M.J. at 483 (quoting *Reed v. Thalacker*, 198 F.3d 1058, 1061 (8th Cir. 1999)). One of the *Donaldson* factors is "the lapse of time between the startling event and the statement." *Id.* (internal quotation marks omitted) (citation omitted).

Given that two of the three *Arnold* elements implicate the timing of the exciting event, it is understandable that the military judge would be concerned if there was no evidence when the alleged abuse occurred. What is not understandable is why he did not recognize this evidence when it was presented. As a foundational note, we emphasize that M.R.E. 803(2), in contrast with M.R.E. 803(1), present sense impression, does not contain a corroboration requirement. This means that the declarant's statement is sufficient to establish the existence of the event that caused his excitement. The four statements, considered together as part of the "totality of the circumstances," provided evidence of the existence of the startling event, an assault, and when it happened, early in the morning of December 29, 2018.

*Statements of JH*. JH made two statements, both of which contain evidence of the timing of the alleged assault. First, he yelled at SSG DC "[h]e's beating my mom. He's beating my mom." Second, he ran back to his house yelling, "[y]ou better not hit her again." Taken at face value, this suggests that, at the very least, immediately prior to leaving his house and

pounding on SSG DC's door, JH believed his mother was be-
ing beaten. Both the present tense of his first exclamation,
"[h]e's beating my mom" and the fact that he ran back to the
house yelling "[y]ou better not hit her again" suggest that the
alleged assault took place shortly before 2 a.m., when JH
pounded on his neighbor's door.

In holding that these statements did not establish timing,
the military judge stated that "the [G]overnment has not
*shown* that JH observed an alleged assault" (Emphasis
added.) The military judge further suggested that, despite the
statement being in the present tense, "it is *possible* that that
JH was saying that, at some point, the accused had assaulted
[K]H." (Emphasis added.) This concern is misplaced.

First, the members must determine whether a declarant
had personal knowledge of what he stated. *See supra* part
II.B. The military judge's analysis is confined to whether a
reasonable member could find that the declarant had per-
sonal knowledge. *Id.* Second, the members must determine
what weight to give hearsay statements, and how to interpret
them. The military judge oversteps when he searches for al-
ternative theories[3] and forces the government to prove to *him*
what weight to give hearsay statements.

Here, JH yelled, "[h]e's beating my mom." This is in the
present tense. That statement, coupled with the time (2 a.m.),
the temperature (20-degree Fahrenheit weather), his excited
state ("scared"), his tone (yelling), and his actions (pounding
on a stranger's door in only his pajamas), could lead a
reasonable court member to find that JH had witnessed the
startling event only moments before he was yelling about his
mother being beaten. JH's statement that the alleged assault
was ongoing was sufficient evidence of when the startling
event took place.

*Statements of KH.* KH also made two statements that
evidence the timing of the alleged assault. First, as she was
running away from her husband towards her neighbor's home
at 3 a.m., she said "He hit me. He hit me." Second, shortly

---

[3] No one, aside from the military judge, suggested that JH's ex-
clamations to SSG DC were about a prior assault, rather than one
that had just taken place.

thereafter she told the 911 operator that her husband had "been beating me for the last couple of hours." KH's statement to SSG DC and her statement to the 911 operator suggest that she fled her home soon after being beaten by her husband. The military judge dismissed KH's statements due to imprecise timing of the assault, as well as her credibility, finding that the marks on her body noted by the officer did not match her testimony that she had been beaten over the past several hours.

While the statement, "he hit me" in isolation may not establish when the assault occurred, this statement had significant context. It was made approximately an hour after her ten-year-old son pounded on his neighbor's door yelling, "he's beating my mom." It was made as KH, JH, and another child ran out of their house, and KH looked scared and like she had been recently crying. This statement, in context, presents sufficient circumstantial evidence to show that KH's statement was made soon after the alleged assault.

Having established that the Government presented sufficient circumstantial evidence that the statements of JH and KH related to a startling event that had just taken place, the rest of our *Arnold* analysis is straightforward.

## B. JH Statements

### (1) JH's statements were both excited and not the product of reflection.

SSG DC testified that JH "pounded" on his door, was "yelling" and looked "frightened" and "scared." The military judge dismissed SSG DC's testimony, stating SSG DC didn't know JH well enough to say whether he was shaking due to being scared or due to being out in the cold. This skepticism is misplaced. First, there is no requirement that a witness must be well acquainted with a declarant to testify about his demeanor. Second, the fact that JH was shaking was not the only indication that he was scared, he was also yelling and pounding on the door of a stranger at 2 a.m. without having taken the time to put on warmer clothing. Third, while being outside in December at 2 a.m. clad only in pajamas could certainly cause a young child to shake with cold, the circumstances surrounding him being out there indicate that he was excited about something. Quite simply, the fact that he was

shaking in the cold with a look of fear on his face, while yelling about his mother being beaten, is sufficient evidence that JH was excited by more than just the temperature.

> (2) The alleged event that prompted JH's statements was "startling."

Having established that the members could find that JH had personal knowledge that his mother was being beaten, and that JH's statements were excited, we consider whether the alleged event would be "startling" and whether this event prompted the excited utterance. We reiterate that the members must determine the ultimate question of whether JH witnessed his mother being beaten. This inquiry then is whether the event his statement related to would be a startling event. *See Donaldson*, 55 M.J. at 482 ("Appellant does not dispute that [the alleged event] would constitute a startling event.") Thankfully, all agree that a ten-year-old watching his mother being beaten would qualify as a startling event. That JH ran outside early in the morning to yell about a startling event that was presently occurring is sufficient evidence that the event prompted his statement.

> (3) JH was still under the excitement of the startling event when he made his statements.

As discussed in *supra* part III.A., this third element relates, at least in part, to the lapse in time between the alleged event and the statement. The circumstances surrounding both statements indicate that a startling event prompted JH to run to a stranger's house early in the morning to pound on his door and yell about what he witnessed. SSG DC testified that JH was yelling and looked scared, and JH's statement indicates that the alleged event had just occurred. Therefore, there is sufficient evidence that JH was still under the excitement of the startling event when he made his statements.

In his questioning of SSG DC, the military judge appeared to find a relevant distinction between JH being "scared" or being "excited."

> Q. Well, you said, for example that he was visibly scared?
>
> A. Yes, he was.

Q. And then the trial counsel keeps coming back with, "So, he was excited?" Was he excited, or was he scared, or what's your opinion?

A. He—I mean, from the opinion—from my opinion, it just looked like he was afraid. He saw something that may have happened, you know.

To the extent that this influenced the MJ's determination, it was misguided. The term "excited" means "emotionally aroused; stirred." *The American Heritage Dictionary of the English Language* 639 (3d ed. 1992). The term "scared" means a "condition or sensation of sudden fear" or a "general state of alarm." *Id.* at 1611. Clearly, being scared is simply a heightened state of excitement.

The military judge also stated that he could not "make a determination that JH was reacting to a startling event as opposed to just repeating what he has been told . . . by his mother." That was inappropriate speculation by the military judge, whose duty was to determine whether no reasonable court member could have concluded that JH had observed a startling event. JH emphatically proclaimed that his mother was being beaten. The members' duty is to determine whether this belief came from personal knowledge, and what weight to give it. The accused is free to challenge the testimony, but the military judge cannot keep it out merely because he is not convinced.

In sum, JH's demeanor and the circumstances surrounding his statement indicate that he was speaking out of excitement and not from reflection and consideration. He stated that his mother was being beaten, which is a startling event. Considering JH's age, the circumstances surrounding his statement, and the statement itself which indicated the beating was presently happening, JH was likely still under the stress and excitement of the startling event when he made his statements. Therefore, the statements qualify as exceptions to the rule against hearsay under M.R.E. 803(2).

C. KH's Statements

(1) KH's statements were both excited.

KH and her children ran out of their house, her husband in pursuit, and told her neighbor, "He hit me. He hit me." She looked "afraid, like scared" and "like she had been crying." She then "cowered over by the coat closet." Shortly thereafter, she spoke to the 911 operator, stating that her husband had "been beating me for the last couple of hours." SSG DC's testimony about her demeanor is sufficient to establish that KH's statements were excited and not the product of deliberation. Though KH's statement was in response to the operator's question, "can you tell me what is going on," this does not move her statement from the realm of spontaneity to that of deliberation. *See United States v. Joy*, 192 F.3d 761, 767 (7th Cir. 1999) (deciding that declarations prompted by questions of "what happened?" and "who did it?" did not destroy their spontaneity) (internal quotation marks omitted) (citations omitted); *United States v. Glenn*, 473 F.2d 191, 194 (D.C. Cir. 1972) (holding that an excited utterance "may be admissible although made in response to an inquiry" as the "decisive factor is that the circumstances reasonably justify the conclusion that the remarks were not made under the impetus of reflection").

(2) The alleged event that prompted
KH's statements was startling.

As with JH's statements, KH's statements related to an event that was startling—being beaten by her husband. Her statements established that she had been hit a few times by her husband, and then she fled her house and had her neighbor call 911. An excited reaction immediately after a startling event, describing that event—particularly one as traumatic as being beaten by one's spouse—indicates that the startling event prompted the statements.

(3) KH was still under the excitement of
the startling event when she made her
statements.

When she made her first statement, "He hit me. He hit me," KH was running from the accused, appearing scared and like she had been crying. She promptly cowered in fear by SSG DC's coat closet. This, coupled with JH's exclamation

shortly before that his mother was being beaten, is sufficient evidence that KH was still under the excitement of a startling event when she made the first statement.

The second statement was made a few minutes later to the 911 operator. SSG DC testified that KH still appeared "afraid," "tearful," and "visibly upset" when she spoke to the 911 operator. Though SSG DC testified that KH had calmed down "maybe just a little bit" from when she was "cowering in the corner," he also said that she "wasn't back to a complete state of calm." Further, her statements to the 911 operator were consistent with her prior statement to SSG DC, and to JH's earlier statements. There is sufficient evidence that KH was speaking while still under the excitement of a startling event and not after a process of reflection and deliberation.

In sum, KH's demeanor and the circumstances surrounding her statements and the statements of JH indicate that KH was still under the excitement of the alleged event when she made her statement to SSG DC and her statement to the 911 operator.

## IV. Conclusion

The military judge erred in applying M.R.E. 803(2). The Government merely needed to show, by a preponderance of the evidence, the declarants were responding to a startling event while still in an excited state. But the military judge evidenced a grudging view of the excited utterance exception and raised the standard to an impermissibly high level. In his analysis of the declarant's statements, the military judge considered each statement in isolation, and focused on whether he was convinced the alleged event happened.

For example, the military judge weighed the evidence and determined that if KH had actually been beaten, "she would have had more visible injuries" than she did. But this is the ultimate question for the members. The military judge should have focused his analysis on whether the Government had shown by a preponderance of the evidence that: (a) the declarants were excited; (b) the alleged event was startling; and (c) whether, if the event had happened, the declarant could have still been under the excitement of the event. No further cor-

roboration of the startling event is required, and it is inappropriate for the military judge to look for alternate theories of what could have prompted the excited statements.[4]

Since the military judge based his ruling on an incorrect view of the law—requiring proof of personal knowledge and considering each statement in isolation—and a view of the facts that leaves us firmly convinced that a mistake was committed—that there was no evidence as to when the assault occurred or that JH could have observed it—we hold that he abused his discretion by excluding the four statements of JH and KH.

## V. Judgment

The certified question is answered in the affirmative. The record is returned to the Judge Advocate General of the Army for remand to the United States Army Court of Criminal Appeals for further action consistent with this opinion.

---

[4] Where factual issues are involved in determining a motion, the military judge shall state the essential findings on the record." R.C.M. 905(d). It is those findings that provide appellate courts the ability to review the military judge's rulings. The fact that there was other evidence available to the military judge to support his ruling does not mean that he considered it or found it credible unless he says so in his essential findings. There is no evidence in the record that the military judge relied on KH's recantation in his admissibility rulings at the Article 39(a) session or at trial. Neither did he make a finding of fact that her testimony was credible and, therefore, her alleged excited utterances were the product of reflection. Rather, his analysis focused solely on the lack of corroboration about the timing of the alleged assault, her alleged intoxication, and that her visible injuries did not match what he would have expected had the assault just taken place. Further, neither the CCA in upholding the military judge's ruling, nor the accused before this Court, contended that the recantation formed the basis for the admissibility ruling. Therefore, we will not defer to the military judge based on speculation that he found a purported abuse victim's recantation credible, and that he based his ruling on this testimony.

Judge OHLSON, dissenting.

The majority concludes that the military judge abused his discretion in refusing to admit four statements under the excited utterance exception. Because I disagree with this conclusion, I respectfully dissent.

This case is ultimately about the deference this Court owes to a military judge's decision to admit or exclude evidence at trial. As explained by the majority, we use an abuse of discretion standard when analyzing such issues, and an abuse of discretion occurs when, inter alia, a military judge makes clearly erroneous factual findings. A finding of fact is clearly erroneous only where this Court is "left with a definite and firm conviction that a mistake has been committed." *United States v. Martin*, 56 M.J. 97, 106 (C.A.A.F. 2001) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)). "This standard requires more than just [this Court's] disagreement with the military judge's decision." *United States v. Bess*, 75 M.J. 70, 73 (C.A.A.F. 2016) (citing *United States v. Stellato*, 74 M.J. 473, 480 (C.A.A.F. 2015)).

In many ways, I do not disagree with the majority's presentation of the facts or the law, or with much of its analysis. Indeed, I believe the military judge could have properly admitted the statements of JH and KH under the excited utterance exception for many of the reasons outlined in the majority opinion. However, I find that it was not an *abuse of discretion* for the military judge to exclude the statements because the record provided a firm factual basis for him to conclude that a startling event did not occur.[1]

My primary concern with the majority opinion is that it fails to appropriately consider KH's testimony at an Article 39(a)[2] hearing related to this case. In my view, this testimony influenced the military judge's decision to exclude the statements of JH and KH. Specifically, at the Article 39(a) hearing,

---

[1] If the preponderance of the evidence does not show a startling event occurred, then none of the statements meet the second prong of the *Arnold* test and are, therefore, inadmissible as excited utterances. *United States v. Arnold*, 25 M.J. 129, 132 (C.M.A. 1987).

[2] Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 839(a) (2012).

KH unequivocally recanted her domestic violence allegations. She stated that Appellee *did not* hit, choke, or headbutt her and that the scratch on her neck that the military police observed "could have been just from [her] scratching [her] own neck." In explaining her motives for falsely accusing Appellee, KH testified that Appellee previously had obtained a civilian restraining order against her to prevent her from entering their home in November 2018 after she had threatened to harm him. During the night in question, Appellee raised the possibly of getting another restraining order against KH because she was "acting crazy," so KH ran upstairs, woke up her young son JH, and "told him to go to the neighbor's house because [her] phone was dead" and "call 911 because [she] wanted [Appellee] to get out [of their home] before [Appellee] got [her] in trouble."

After considering the testimony presented at trial, the military judge stated the following when discussing the admissibility of JH's statements: "The court cannot make a determination that JH was reacting to a startling event as opposed to just repeating . . . what he had been told by his mother." And, with regard to KH's statements, the military judge found it "unclear from the evidence presented whether the alleged assault served as the startling event that prompted [KH]'s statements to [her neighbor] and her 911 call." Therefore, he concluded that he could not find that either JH's or KH's statements met the second prong of the *Arnold* test.

The majority, however, claims that the military judge erred because it was "inappropriate for the military judge to look for alternate theories of what could have prompted the excited statements." I disagree with this assertion. The military judge did not go "*look*[*ing*] *for* alternate theories"; rather, he was explicitly *presented with* an alternate version of the relevant facts through KH's testimony at the motions hearing where she recanted her sworn statement made to the military police and stated that she falsely accused Appellee. (Emphasis added.) Even though the military judge did not specifically cite KH's recantation in his later ruling during the case-in-chief, the testimony gave the military judge a firm factual basis to determine that a startling event did not prompt the excited statements.

Just as panel members "may properly believe one witness and disbelieve several other witnesses whose testimony conflicts with the one," the military judge may do so in making his findings of fact. Dep't of Army, Pam. 27-9, Legal Services, Military Judge's Benchbook, ch. 2, § V, para. 2-5-12 (2020). Accordingly, I would find that the military judge did not clearly err by deciding to credit the version of events presented by KH at the Article 39(a), UCMJ, session rather than the version of events presented by the neighbor at trial, and by therefore finding that a startling event *did not* occur.[3]

In reaching my conclusion, I am acutely mindful of the fact that this is an alleged domestic abuse case and of all the factors that could cause such a victim to falsely recant meritorious allegations. For example, KH may have recanted her testimony because she is still married to Appellee and she could have been acting under his malign influence. Brief for Legal Momentum and Sanctuary for Families as Amici Curiae Supporting Appellant at 7, *United States v. Henry*, No. 20-0342 (C.A.A.F. Aug. 13, 2020) ("Abusers are . . . highly motivated

---

[3] The majority states that "[t]here is no evidence on the record that" KH's Article 39(a) testimony influenced the military judge's decision to exclude the evidence, noting that the military judge did not cite KH's testimony in his admissibility rulings at trial or "make a finding of fact that her testimony was credible." Therefore, the majority refuses to "defer to the military judge based on speculation that he found a purported abuse victim's recantation credible, and that he based his ruling on this testimony." I first note, however, that the Supreme Court held in *Anderson v. Bessemer City*, that an appeals court may not reverse a trial court's decision to credit a particular version of events if that version of events "is plausible in light of the record *viewed in its entirety*." 470 U.S. 564, 574 (1985) (emphasis added). Therefore, the implication by the majority that this Court may consider only that evidence that is explicitly cited by a military judge as a finding of fact—rather than the record in its entirety—is mistaken. Second, although the military judge did not explicitly note KH's recantation when excluding the statements at trial, he ruled against the admission of the hearsay statements at the earlier Article 39(a) hearing directly after hearing KH's recantation. Thus, not only is KH's recantation in the record before us, her testimony formed the basis for the military judge's earlier ruling in which he excluded the statements at issue. For these reasons, I believe the majority's approach to this issue is misguided.

to coerce victims to recant or decline to participate in prosecutions, and correctly estimate they will succeed in intimidating the victim into recanting or to declining to participate in the prosecution."). Indeed, under a de novo standard of review, this Court would have weighed the recantation by this potential domestic abuse victim against the testimony of the involved neighbor who appears to have had no motive to lie, and would have considered all the circumstantial evidence in this case. However, the standard of review is not de novo.

Whether or not we believe that KH's recantation testimony at the motions hearing was credible, it is the military judge who gets to make that determination in assessing whether hearsay statements can come in at trial. *See, e.g.*, *United States v. Feltham*, 58 M.J. 470, 473 (C.A.A.F. 2003) (making a finding of fact that a startling event had occurred and that statements during the event were made under stress). As the Supreme Court held in *Anderson*:

> If the [trial] court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.

470 U.S. at 573–74. After all, the military judge is ultimately in a superior position "to make determinations of credibility" because "only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said." *Id*. at 574–75.

In sum, because the standard of review is abuse of discretion, and there is evidence in the record—by way of KH's motions testimony—to support the military judge's determination, I do not find an adequate or appropriate basis to conclude that the military judge's findings of fact were *clearly* erroneous. I would therefore answer the certified issue in the negative and affirm the CCA's ruling in its entirety.

Accordingly, I respectfully dissent.

Judge MAGGS, dissenting.

The military judge ruled that Staff Sergeant Carson's statements about what he heard the accused's son (JH) and the accused's wife (KH) say on the evening of the charged assault were inadmissible because they contained hearsay. In so doing, the military judge rejected the Government's argument that the statements were admissible under the exception in Military Rule of Evidence (M.R.E.) 803(2) for excited utterances. M.R.E. 803 provides: "The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness: . . . (2) *Excited Utterances*. A statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." The military judge concluded that the Government had not laid the foundation for the exception.

With respect to the son's statements, the military judge found that he "[could not] make a determination that JH was reacting to a startling event" based on the evidence presented. With respect to the wife's statements, the military judge similarly found: "Without evidence of when the alleged assault occurred, I cannot make a determination that the alleged victim was acting under the stress and excitement caused by the event or condition." In this appeal, the Government argues that the military judge erred because the "preponderance of the evidence" established the foundation for the exception in M.R.E. 803(2) for all the statements at issue.

We review a military judge's evidentiary rulings for an abuse of discretion. A military judge abuses his discretion "when his findings of fact are clearly erroneous, the court's decision is influenced by an erroneous view of the law, or the military judge's decision on the issue at hand is outside the range of choices reasonably arising from the applicable facts and the law." *United States v. Miller*, 66 M.J. 306, 307 (C.A.A.F. 2008). "A finding of fact is clearly erroneous when there is no evidence to support the finding, or when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Criswell*, 78 M.J. 136, 141 (C.A.A.F. 2018) (citations omitted) (internal quotation marks omitted).

In this case, the Government's primary theory appears to be that the military judge abused his discretion by making two clearly erroneous findings of fact. The first finding is that the Government did not establish that JH had direct knowledge of the alleged assault, and the second finding is that the Government did not establish when the alleged assault occurred.[1] The Government acknowledges that the record contains no direct evidence that JH saw the assault. But quoting *McLaughlin v. Vinzant*, 522 F.2d 448, 451 (1st Cir. 1975), the Government contends that the military judge in this case should have " 'draw[n] an inference' that JH had firsthand knowledge of the alleged assault 'not only from the force of [JH's] statement itself but from the fact that []he was . . . somewhere in the immediate vicinity' of the alleged assault." (Second and third interpolations in original.) The Government also acknowledges that the record contains no direct evidence of when the charged assault occurred. But the Government argues that "the military judge failed to give due weight to the circumstantial evidence that the alleged assault occurred immediately preceding or a short time before KH's outcry."

I agree with Judge Ohlson that the Government's theory fails because the military judge's findings of fact are not clearly erroneous. As Judge Ohlson explains, there is some support for the military judge's findings in KH's testimony during an Article 39(a), UCMJ, hearing in this case, which the Government has generally overlooked in its briefs.[2] But

---

[1] The Government states: (1) "The military judge first erred by finding that 'it is unclear from the evidence presented whether the alleged assault served as the startling event that prompted [KH]'s statements . . . [in] her 911 call' " (interpolations in original); and (2) "The military judge also erred in finding that there was 'insufficient evidence to support th[e] conclusion' that JH's 'statement was made in an excited state' " (interpolation in original). The Government does not expressly assert that these two allegedly erroneous findings were "clearly erroneous," but the Government correctly states the clear error standard of review elsewhere in its brief.

[2] The Court errs in reasoning that the military judge's findings of fact are clearly erroneous because "[t]here is no evidence in the record that the military judge relied on KH's recantation in his admissibility rulings at the Article 39(a) session or at trial." *Henry*, __ M.J. __, __ n.4 (13 n.4). It is true, as the Court states, that R.C.M.

even putting KH's testimony aside, I also disagree with the Government's argument that the military judge's findings of fact in this case are clearly erroneous merely because the military judge declined to draw inferences from the circumstantial evidence in the record when making the findings.

A trier of fact undoubtedly *may* make findings based on inferences from facts in the record, and such findings will be upheld on appeal unless they are clearly erroneous. *See Anderson v. City of Bessemer*, 470 U.S. 564, 577 (1985). But the question here is whether the military judge's findings were clearly erroneous because the military judge *was required* to draw inferences about matters not supported by the direct evidence in this case. The answer is no. "[T]he fact that there may have been evidence to support an inference contrary to that drawn by the trial court does not mean that the findings are clearly erroneous." *Ceraso v. Motiva Enterprises, L.L.C.,* 326 F.3d 303, 316 (2d Cir. 2003).

As stated above, a finding of fact is clearly erroneous if "there is no evidence to support the finding" or if the reviewing authority has a "definite and firm conviction that a mistake has been committed." *Criswell*, 78 M.J. at 141. In this case, the military judge's findings of fact are not clearly erroneous. They are supported *by the lack of direct evidence* in the record about what JH saw or when the alleged assaults occurred. And the circumstantial evidence about what might

---

905(d) required the military judge to state his essential findings on the record. But the military judge complied with R.C.M. 905(d) by stating his essential findings on the record. As described above, the military judge stated that he "[could not] make a determination that JH was reacting to a startling event" and that he could not "make a determination that [KH] was acting under the stress and excitement caused by the event or condition." There is no additional requirement that a military judge also expressly identify the evidence relied on in making findings of fact. Instead, the clear error standard requires only that the record contain sufficient evidence to support the military judge's findings. *Criswell*, 78 M.J. at 141. Put another way, when an appellate court applies the clear error standard of review to a trial judge's findings, the appellate court considers only whether the record contains testimony or other evidence that the trial judge "*could have relied on*" in making the findings. *Hernandez v. New York*, 500 U.S. 352, 369 (1991) (emphasis added).

have happened in Appellee's house is insufficient to provide a "definite and firm conviction" that JH actually had firsthand knowledge of the alleged assault and that the alleged assault actually occurred immediately preceding or a short time before KH's outcry. Other triers of fact, when confronted with this lack of direct evidence, might have made different findings based on inferences from circumstantial evidence of the kind advocated by the Government. But "the fact that [an appellate court] might have drawn one inference does not entitle it to overturn the trial court's choice of the other." *Healey v. Chelsea Resources, Ltd.*, 947 F.2d 611, 618 (2d Cir. 1991). *See also United States v. Lewis*, 78 M.J. 447, 452 (C.A.A.F. 2019) (requiring evidence to be reviewed in the light most favorable to the party who prevailed at trial).